FERMÍN ARRAIZA IGLESIAS, demandante y apelado, *v.* ISMAEL REYES JIMÉNEZ y BLANCA MÁTER OTERO, demandados; FÉLIX A. LEÓN, interventor y apelante.

Núm. 10028.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Noviembre 30, 1949.

*A. Miranda Esteve* y *R. Martínez Álvarez,* abogados del apelante; *José M. Portela,* abogado del apelado.

El Juez Presidente Señor de Jesús emitió la opinión del tribunal.

En el presente caso no existe controversia en cuanto a los hechos. La única cuestión a determinar es si puede embargarse por un acreedor del demandado un crédito de éste contra la Autoridad de Acueductos y Alcantarillados de Puerto Rico por concepto de obras realizadas por él para dicha corporación.

 Conforme resulta de los autos Fermín Arraiza instó pleito en cobro de dinero contra Ismael Reyes Jiménez, a quien la Autoridad de Acueductos y Alcantarillados de Puerto Rico—antes denominada Servicio Insular de Acueductos y Alcantarillados—[1] debía cierta cantidad por concepto de las obras del alcantarillado de Cabo Rojo realizadas por él y ya aceptadas por la Autoridad. Para asegurar la efectividad de la sentencia, Arraiza embargó dicho crédito hasta la suma de $6,180 y una cantidad adicional de $300 para intereses, costas, gastos y desembolsos del pleito, incluyendo honorarios de abogado. El interventor[2] solicitó se anulase la orden de embargo fundándose en que dicho crédito no podía ser embargado por derivarse de la construcción de una obra pública y hallarse la cantidad embargada en poder de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, que es una corporación pública. La corte inferior denegó la moción del interventor por resolución de 6 de mayo de 1949 y para revisarla interpuso el presente recurso.

En el caso de *F. H. A.* v. *Burr,* 309 U. S. 242 (1940) donde

---

[1] Esta corporación originalmente se llamaba Servicio Insular de Acueductos y Alcantarillados de Puerto Rico, según la Ley de Acueductos y Alcantarillados de Puerto Rico aprobada el 1ro. de mayo de 1945 (pág. 139) que fué enmendada en todas sus secciones por la Ley núm. 163 aprobada el 3 de mayo de 1949 (pág. 431).

[2] De los autos no aparece cuál es el interés del interventor en la cantidad embargada, pero habiéndose concedido la intervención, debemos presumir que alguno tenía.

también se trataba del embargo de un crédito que un empleado de dicha Agencia tenía contra ella, se sostuvo que tal embargo (*garnishment*) era procedente. Se basó la decisión en que el Congreso puede renunciar a la inmunidad contra pleitos de que goza el gobierno; que cuando el Congreso establece una agencia gubernativa y como a la Federal Housing Administration le permite dedicarse a transacciones comerciales y de negocios con el público y le concede el poder de demandar y ser demandada, debe presumirse que esa agencia está tan sujeta a procedimientos judiciales como lo estaría cualquier empresa privada en circunstancias similares, siempre que los fondos embargados estén separados del Tesoro de los Estados Unidos y a menos que se demuestre que las palabras "para demandar y ser demandada" fueron usadas por el Congreso en un sentido restringido o que una restricción implícita de esa facultad fuere necesaria para evitar graves interferencias con la ejecución de sus funciones gubernativas; que las palabras "demandar y ser demandada" en su acepción corriente, comprenden todos los procedimientos legales incidentales a la institución o continuación de un pleito; que sostener que el Congreso no tuvo la intención de incluir tal procedimiento (*garnishment*) en las palabras "demandar y ser demandada", por lo general privaría a los pleitos de parte de su eficacia; y que el embargo trabado sobre un crédito del demandado (*garnishment*) lo mismo que trabado sobre bienes del demandado en poder de éste (*attachment*) son parte del procedimiento provisto por la ley para el cobro de deudas.(³)

A la luz de la doctrina enunciada, determinaremos ahora si la Legislatura, al crear la Autoridad de Acueductos y Alcantarillados de Puerto Rico, prestó su consentimiento para que pudieran embargarse fondos en poder de ella pertenecientes a un acreedor suyo. A ese efecto precisa examinar,

(³)Para el origen y evolución de esta doctrina consúltense 32 Ill. Law Rev. 483 y 89 University of Pa. Law Rev. 482.

en lo pertinente, la Ley núm. 40 de 1ro. de mayo de 1945 (pág. 139) que creó la agencia gubernamental en cuestión, según fué enmendada en todas sus secciones por la núm. 163 de 3 de mayo de 1949 (pág. 431).[4]

Por la sección 2 de la Ley núm. 163 de 1949 se dispuso que la Autoridad de Acueductos y Alcantarillados de Puerto Rico constituiría una corporación pública e instrumentalidad autónoma de El Pueblo de Puerto Rico y se le concedieron las facultades siguientes: por la sección 4(c) para demandar y ser demandada como tal corporación, excepto que no podrá ser demandada por daños y perjuicios causados por la impureza, irregularidad o insuficiencia real o alegada del agua servida por ella y que no se permitirá la venta judicial de sus propiedades; por la 4(d) para hacer contratos y formalizar todos los documentos que fueren necesarios o convenientes en el ejercicio de cualesquiera de sus poderes; por la 4(e) para adquirir bienes de cualquier clase y disponer de los mismos, cuando los considere excedentes a sus fines; por la 4(g) para tomar dinero a préstamo y emitir bonos cuyo principal e intereses sean pagaderos, en todo o en parte, de las rentas de la Autoridad. Se dispuso, además, por la sección 4(n) que los bonos y otras obligaciones emitidos por la Autoridad no constituirán una deuda de El Pueblo de Puerto Rico o de ninguno de sus municipios o de sus otras subdivisiones políticas y que ni El Pueblo de Puerto Rico, ni ninguno de sus municipios, ni sus otras subdivisiones políticas, será responsable de los mismos, ni dichos bonos u otras obligaciones se pagarán de fondo alguno que no sean fondos de la Autoridad; y por la sección 7, que todos los dineros de la Autoridad se depositarán en depositarios reconocidos para los fondos del Gobierno Insular o de sus instrumentalidades, pero se mantendrán en cuenta o cuentas sepa-

---

[4] Cuando se aprobó la ley enmendatoria, ya el embargo se había trabado, pero aparte de que en lo pertinente se trata de una cuestión procesal, las secciones a que nos referimos en la opinión son sustancialmente iguales en las dos leyes.

radas inscritas a nombre de la Autoridad, y que los desembolsos se harán por ésta, de acuerdo con los reglamentos y presupuestos aprobados por su Junta de Gobierno.

Basta considerar las secciones a que hemos aludido para concluir que al crear la Legislatura la Autoridad de Acueductos y Alcantarillados de Puerto Rico constituyéndola en una instrumentalidad gubernamental autónoma; y al autorizarla para demandar y ser demandada con las únicas excepciones que ya hemos apuntado; para hacer contratos; para adquirir toda clase de bienes y disponer de los mismos; para tomar dinero a préstamo cuyo principal e intereses serían pagaderos, en todo o en parte, de las rentas de la Autoridad; al disponer que los dineros de la Autoridad se mantendrán en cuenta o cuentas separadas de los fondos del Gobierno Insular y autorizarla para desembolsarlos de acuerdo con los reglamentos y presupuestos aprobados por su Junta; y por último, al prohibirle empeñar en ningún tiempo ni en ninguna forma el crédito de El Pueblo de Puerto Rico, claramente expresó la Legislatura la intención de que esta Autoridad estuviera tan sujeta a procedimientos judiciales como en circunstancias análogas lo estaría cualquier empresa privada, siempre que no se interfiera con la ejecución de sus funciones ejecutivas.

Réstanos ahora exponer que por las disposiciones expresas de la Ley a que hemos hecho referencia, el dinero embargado en el presente caso se hallaba depositado separadamente de los pertenecientes a El Pueblo de Puerto Rico; y que en manera alguna se ha interferido con la ejecución de las funciones gubernativas de la Autoridad, quien en ninguna forma ha protestado del embargo.

Aplicando por analogía la doctrina enunciada en el caso de *Burr*, supra, fuerza es concluir que no erró la corte inferior al ordenar el embargo en el presente caso.

Los casos citados por el interventor no son pertinentes. En ellos se trataba de fondos en poder del Gobierno, sin que

El Pueblo de Puerto Rico hubiera renunciado a su inmunidad contra pleitos, como lo ha hecho con respecto a la Autoridad de Acueductos y Alcantarillados de Puerto Rico. Al resolver dichos casos este Tribunal siguió la doctrina establecida en *Buchanan* v. *Alexander*, 4 How. 19, 20 (U. S. 1846), 11 L. ed. 857 distinguido en el caso de *Burr*, supra.

*Procede la confirmación de la resolución apelada.*