COMMOLOCO OF CAGUAS, INC., demandante y peticionaria, v. RAMIRO BENÍTEZ DÍAZ, demandado; AUTORIDAD DE CARRETERAS DE PUERTO RICO, interventores y recurridos.

| Números: | RE-86-470 | Resueltos: 13 de junio de 1990 |
| | CE-87-9 | |
| | CE-86-759 | |
| | CE-86-583 | |
| | CE-86-694 | |
| | CE-86-722 | |
| | CE-86-448 | |

*Carmelo Nieves Figueroa, José Julián Álvarez González* y *Cándido F. Monteserrín,* abogados de la Autoridad de Acueductos y Alcantarillados, peticionaria; *José E. Vilá Barnes,* abogado de Commoloco de Sabana Grande, Inc., recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares,* en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell,* de *Martínez, Odell Calabria & Sierra,* y *Carlos F. López,* abogados de

la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae*.

PETICIÓN DE *CERTIORARI* (CE-86-759) para revisar una RESOLUCIÓN de *Delia Lugo Bougal*, J. (Ponce), que confirma una resolución anterior que ordenaba el embargo de sueldo de un empleado de cierta corporación pública. *Se expide el auto y se revoca la resolución recurrida en el Caso Núm. CS-86-1909.*

*Richard V. Pereira* y *José Julián Álvarez González*, abogados de la Autoridad de Acueductos y Alcantarillados, peticionaria; *Oreste Ramos*, abogado de Metro Finance Co., recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares*, en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell*, de *Martínez, Odell Calabria & Sierra*, y *Carlos F. López*, abogados de la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae*.

PETICIÓN DE *CERTIORARI* (CE-86-583) para revisar una RESOLUCIÓN de *Enrique Rivera Santana*, J. (Bayamón), que declara no ha lugar una petición de *certiorari* para revisar una resolución que ordenaba el embargo de sueldo de un empleado de cierta corporación pública. *Se expide el auto y se revoca la resolución recurrida en el Caso Núm. CS-86-3080.*

*Gilberto Rodríguez Zayas, Carmelo Nieves Figueroa* y *José Julián Álvarez González*, abogados de la Autoridad de Acueductos y Alcantarillados, peticionaria; *Oreste Ramos*, abogado de Metro Finance Co., recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares*, en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell*, de *Martínez, Odell Calabria & Sierra*, y *Carlos F. López*, abogados de la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae*.

SENTENCIA (RE-86-470) de *Ángel G. Hermida*, J. (San Juan), que revoca una sentencia anterior que ordenaba el embargo de sueldo de un empleado de cierta corporación pública. *Confirmada la sentencia del Caso Núm. PE-86-805.*

*Luis A. Arrufat Pimentel*, abogado de la Cooperativa de Ahorro y Crédito de Cataño, recurrente; *Moraima Arbona, Cándido F. Monteserrín* y *José Julián Álvarez González*, abogados de la

Autoridad de Acueductos y Alcantarillados, recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares,* en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell,* de *Martínez, Odell Calabria & Sierra,* y *Carlos F. López,* abogados de la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae.*

PETICIÓN DE *CERTIORARI* (CE-86-448) para revisar una SENTENCIA de *Ángel G. Hermida,* J. (San Juan), que revoca una sentencia anterior que ordenaba el embargo de sueldo de un empleado de cierta corporación pública. *Se expide el auto y se confirma la sentencia recurrida en el Caso Núm. PE-86-562.*

*José M. Casanova Edelmann,* abogado de Island Finance Corporation of Santurce, peticionaria; *Gilberto Rodríguez Zayas, Ernesto Lebrón González, Moraima Arbona* y *Cándido F. Monteserrín,* abogados de la Autoridad de Acueductos y Alcantarillados, recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares,* en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell,* de *Martínez, Odell Calabria & Sierra,* y *Carlos F. López,* abogados de la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae.*

PETICIÓN DE *CERTIORARI* (CE-86-722) para revisar una RESOLUCIÓN de *Carlos de Jesús Rivera Marrero,* J. (Humacao), que revoca una resolución anterior que ordenaba el embargo de sueldo de un empleado de cierta corporación pública. *Se expide el auto y se confirma la resolución recurrida en el Caso Núm. CS-86-732.*

*Jimmy Soto Ledesma,* abogado de Best Finance Corporation, peticionaria; *Carmelo Nieves Figueroa, José Julián Álvarez González* y *Cándido F. Monteserrín,* abogados de la Autoridad de Acueductos y Alcantarillados, recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares,* en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell,* de *Martínez, Odell Calabria & Sierra,* y *Carlos F. López,* abogados de la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae.*

PETICIÓN DE *CERTIORARI* (CE-86-694) para revisar una RESOLUCIÓN de *Enrique A. Jordán Musa,* J. (Caguas), que revoca una resolución anterior que ordenaba el embargo de sueldo de un empleado de

cierta corporación pública. *Se expide el auto y se revoca la resolución recurrida en el caso Núm. CS-86-1071.*

*José E. Vilá Barnes,* abogado de Commoloco of Caguas, Inc., peticionaria; *Héctor M. Torres Cartagena,* abogado de la Autoridad de Carreteras de Puerto Rico, recurrida; *Norma Cotti Cruz, Subprocuradora General, Blanca Díaz Segarra* y *Anabelle Rodríguez, Procuradoras Generales Auxiliares,* en Informe; *Patrick D. O'Neill, Lucé Vela Gutiérrez* y *Lawrence Odell,* de *Martínez, Odell Calabria & Sierra,* y *Carlos F. López,* abogados de la Asociación Puertorriqueña de Financieras del Consumidor, *amicus curiae.*

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

■ Desde principios de siglo se ha presentado ante este Tribunal, bajo distintas variantes, la interrogante de si los sueldos de los empleados públicos están o no sujetos a embargo. Consistentemente hemos negado el uso de este mecanismo procesal para estos propósitos. La política ha "sido eximir los sueldos de los funcionarios y empleados del Gobierno no con el fin de favorecer a los deudores sino para asegurar un servicio eficiente y continuo al [G]obierno mismo". *Blanco v. Carballeira, Juez,* 41 D.P.R. 533 (1930).

■ "La regla en esta jurisdicción, así como en los Estados Unidos, es al efecto de que los sueldos de los empleados públicos están exentos de embargo. Esta regla está basada en una razón de orden público, cual es, que de permitirse tal embargo, se perjudicaría grandemente el gobierno que deba recibir los servicios de ese empleado, pues se presume que el empleado así privado de su sueldo no prestará sus servicios con la misma eficiencia que lo haría teniendo el estímulo de recibir a su debido tiempo la compensación de su trabajo." *Padrón Rivera v. Cordovés, Juez,* 59 D.P.R. 255, 258 (1941). Además, "las actividades gubernamentales no deben estar sujetas a las inconveniencias de estos procedimientos que interfieren con el descargo de funciones públicas en detrimento del bien común. . .". *Stump Corp. v. Tribunal Supe-*

*rior,* 99 D.P.R. 179, 181 (1970). "Ello tiene el efecto de convertir al Estado en un agente cobrador del demandante contra su voluntad." *Torres Santa v. Benítez Roldán,* 115 D.P.R. 85, 87 (1984).

## I

El caso ante nos plantea la interrogante de si los principios antes expuestos aplican cuando se trata del embargo de los sueldos de empleados de una corporación pública. A continuación exponemos los hechos que suscitan el planteamiento.

Dentro de un período de tiempo relativamente corto fueron presentados ante este Tribunal siete (7) recursos donde básicamente se plantean idénticas cuestiones de hecho y derecho. Ante tal situación los consolidamos. En cada uno de estos casos el demandante en cobro de dinero fue una compañía de préstamos personales pequeños (en adelante financiera) y el demandado un empleado de una corporación pública. Específicamente seis (6) de éstos laboran en la Autoridad de Acueductos y Alcantarillados (en adelante A.A.A.) y uno (1) en la Autoridad de Carreteras.

En cada uno de los casos el tribunal de instancia dictó sentencias favorables a la parte demandante. En virtud de ello, y a tales fines, las partes que prevalecieron en los pleitos solicitaron y obtuvieron de los respectivos tribunales, órdenes de embargo de salarios dirigidas a las corporaciones públicas para las cuales trabajaban los demandados. Ante tales circunstancias, las referidas corporaciones públicas obtuvieron autorización para intervenir en los procedimientos con el propósito de presentar argumentos en favor de que se dejaran sin efecto las órdenes de embargo.

El planteamiento medular de las antes mencionadas corporaciones fue básicamente que sus empleados deben ser considerados empleados públicos y que, como tales, sus sueldos no pueden ser embargados conforme a la doctrina enunciada y antes expuesta por este Tribunal.

Los tribunales de instancia acogieron el planteamiento en cuatro (4) de los siete (7) casos consolidados, mientras que en los restantes tres (3) determinaron que a las corporaciones públicas

no les son aplicables los principios que fundamentan la prohibición de embargo de los sueldos de los empleados públicos. Por existir opiniones conflictivas en los tribunales de instancia, decidimos revisar y expedimos los autos de *certiorari*.

## II

Hasta mediados del año 1919 el Código de Enjuiciamiento Civil de Puerto Rico, Art. 249(7), contenía una disposición expresa que prohibía el embargo de salarios de los funcionarios o empleados públicos. La Ley Núm. 32 de 3 de junio de 1919 (32 L.P.R.A. sec. 1130) eliminó la distinción entre los empleados públicos y los de la empresa privada. Dispuso una protección limitada a las tres cuartas partes del sueldo del empleado, siempre y cuando éste pudiera probar que dicha partida era necesaria para el sostenimiento de su familia. No hay discusión alguna en el historial legislativo sobre la razón para eliminar la disposición específica que prohibía el embargo del sueldo del empleado público.

Ante la ausencia de disposición en ley sobre la protección contra embargo del sueldo del empleado público, nace por vía jurisprudencial en *Blanco v. Carballeira, Juez*, supra, la norma que hoy nos ocupa. En dicho caso el Juez Asociado Señor Wolf resolvió que los sueldos de los empleados públicos no eran embargables.(1) Su principal fundamento fue que de la eliminación de la disposición expresa que prohibía el embargo del sueldo de los empleados públicos "no podría inferirse la intención de *hacer que tales sueldos [estuviesen] sujetos a embargo, a menos que fueren generalmente embargables a virtud de alguna disposición específica de la ley*". Íd., pág. 534. Después de todo, no había disposición específica de ley que impusiera a algún funcionario el deber de retener el sueldo embargado.

◼ A partir de este pronunciamiento, la doctrina sólo ha ido añadiendo argumentos en favor de mantener la prohibición de

---

(1) Esta cuestión había sido planteada pero no resuelta en *Torres v. Corte Municipal*, 35 D.P.R. 378 (1926).

embargo de los sueldos de los empleados públicos. Véanse: *Padrón Rivera v. Cordovés, Juez,* supra; *E.L.A. v. Tribunal Superior,* supra; *Stump Corp. v. Tribunal Superior,* supra; *Torres Santa v. Benítez Roldán,* supra. Sin embargo, en ninguno de estos casos estaba implicado el ·embargo de sueldos de empleados de una corporación pública. Los que más se asemejan al problema ante nuestra consideración son los casos *Rodríguez v. Fontes y Am. R.R. Co., Int.,* 51 D.P.R. 670, 672, 678 (1937), y *Arraiza v. Reyes; León, Interventor,* 70 D.P.R. 614 (1949). En el primero, la *American Railroad* presentó una moción de intervención en la que alegó que un embargo de sueldo ordenado por el tribunal de instancia en relación a un empleado suyo "interrumpía el buen funcionamiento de su oficina y afectaba el servicio que prestaba como compañía de servicio público que era". *Rodríguez v. Fontes y Am. R.R. Co., Int.,* supra, pág. 672. El tribunal de instancia expresó en su resolución que a "'[u]na corporación privada, aunque explote una empresa de servicio público, no se encuentra en la misma posición de privilegio que es inherente a los organismos y dependencias oficiales del gobierno y las prerrogativas propias de estos organismos no las disfrutan en modo alguno las entidades privadas'". *Rodríguez v. Fontes y Am. R.R. Co., Int.,* supra, pág. 675. En esa ocasión, al revocar al tribunal de instancia, indicamos que la *American Railroad* no venía obligada a cumplir la orden de embargo, en cuanto a "sueldos no devengados a la fecha de la misma se refiere".(2) Nada dijimos en cuanto al efecto de que se estuviese frente a una corporación privada, no pública.

---

(2) Para la definición de qué son salarios "no devengados", refiérase a *Diego Agueros & Co. v. Heres,* 50 D.P.R. 533 (1936). Específicamente, en cuanto a los sueldos de los empleados públicos, éstos no están sujetos a embargos aunque hayan sido devengados mientras no hayan sido pagados. Así lo resolvimos en *Torres Santa v. Benítez Roldán,* 115 D.P.R. 85, 87 (1984): "Llámese embargo, secuestro, o como sea, lo cierto es que la orden dictada tiene el efecto de obligar al Estado a descontar de cada pago quincenal del demandado una cantidad de dinero y pagarla a un tercero. Ello tiene el efecto de convertir al Estado en un agente cobrador del demandante, contra su voluntad. Fácil es imaginar el efecto adverso que esta práctica tendría sobre el trámite del Departamento de Hacienda para pagar a los empleados del Estado, de generalizarse la misma." La prohibición de embargo de sueldos de los empleados públicos es aplicable tanto a sueldos aún sin devengar como a los ya devengados, en tanto éstos se hallen en poder del Estado.

Por su parte, en *Arraiza v. Reyes*; *León, Interventor*, supra, se intentó embargar un crédito que un deudor por sentencia tenía contra la A.A.A. A través de una moción de intervención, un tercero solicitó la anulación de embargo alegando que dicho crédito no podía ser embargado por derivarse de la construcción de una obra pública y hallarse la cantidad embargada en poder de la A.A.A., una corporación pública.(3) La petición fue desestimada.

Se determinó, conforme a las disposiciones expresas de la ley habilitadora de la A.A.A., Ley Núm. 40 de 1ro de mayo de 1945 (22 L.P.R.A. sec. 144), y lo resuelto en *F.H.A. v. Burr*, 309 U.S. 242 (1940), que la Legislatura había concedido suficientes poderes operacionales a la A.A.A. como para considerarla "tan sujeta a procedimientos judiciales como en circunstancias análogas lo estaría cualquier empresa privada, siempre que no se interfi[ri]era con la ejecución de sus funciones ejecutivas". *Arraiza v. Reyes*; *León, Interventor*, supra, pág. 618. Este caso es claramente distinguible del de autos. En primer lugar, en *Arraiza v. Reyes*; *León, Interventor*, supra, el crédito embargable no pertenecía a un empleado regular de la corporación. Se trataba de un contratista independiente. En segundo término, aun frente a ese hecho, se condicionó el permiso de embargo a que no se interfiriera con la labor de las funciones ejecutivas de la Corporación.

El caso ante nos no versa sobre un incidente aislado relacionado con un contratante independiente a cuyo favor la corporación pública posee un crédito aún no pagado. Por el contrario, los embargos pretendidos incluirían potencialmente todos los sueldos de los empleados regulares con que opera cualquiera de las corporaciones públicas.

Aclarado lo anterior, en vista de que la prohibición de embargo de sueldo ha sido aplicada en aquellos casos en que se trata de empleados públicos adscritos al sistema central de gobierno, nos resta determinar si esta doctrina debe extenderse a los empleados de las corporaciones públicas.

---

(3) En una nota al calce el Tribunal aclara que desconoce el interés del interventor, pero presume que alguno tenía.

## III

■ Las corporaciones públicas, tal y como operan en la actualidad, surgieron como respuesta al deseo de agilizar y promover la efectividad de la obra pública ante la complejidad de funciones que confrontaron los gobiernos a partir de la Primera Guerra Mundial. *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982).[4]

■ Conforme a su configuración funcional, a las corporaciones públicas se les define como "una institución que ofrece un servicio económico o social en nombre del gobierno, pero como una entidad jurídica independiente; conduce sus operaciones con gran autonomía, aun cuando es responsable ante el público, a través del gobierno y del parlamento, y sujet[a] a alguna directriz de parte del gobierno; equipada, por otro lado, con sus propios fondos independientes y separados, y con los atributos jurídicos y comerciales de una empresa comercial. Estos atributos colocarían a la corporación pública en algún lugar intermedio entre una autoridad pública pura y una compañía comercial de derecho privado". (Traducción nuestra.) W. Friedman, *The Public Corporation: A Comparative Symposium*, Toronto, Carswell Co., 1954, pág. 541.[5]

■ Lo que impulsa a la adopción estratégica de este ente independiente es la realidad de que "la corporación es intrínsecamente más hábil para triunfar en ciertos campos, que el departamento ordinario de la administración". A.R. Brewer Carias, *Las empresas públicas en el derecho comparado*, Caracas, U. Central de Venezuela, Vol. XXXVII, 1967, pág. 86.

---

[4] "Debe señalarse ante todo que es un fenómeno de vigencia universal, el de la progresiva y cada vez más rápida ampliación de las tareas de las entidades estatales, en vista de la satisfacción de necesidades de interés general." A.R. Brewer Carias, *Las empresas públicas en el derecho comparado*, Caracas, U. Central de Venezuela, 1967, Vol. XXXVII, pág. 22.

[5] Precisamente, en virtud de los factores consignados en esta definición, el Presidente Roosevelt se refirió a las corporaciones públicas como unas investidas con el poder del Gobierno, pero poseedoras de la flexibilidad de una empresa privada. W. Friedman, *The Public Corporation: A Comparative Symposium*, Toronto, Carswell Co., 1954, pág. 541.

■ No obstante, a pesar de la autonomía que caracteriza a las corporaciones públicas, éstas no pierden su cualidad de instrumentalidad gubernamental, creada para responder a propósitos de utilidad pública. Véanse: *York County Fair Assn. v. South Carolina Tax Commn.*, 154 S.E.2d 361 (1967); *Sharon Realty Company v. Westlake*, 188 N.E.2d 318 (1961).[6] Por tal razón, en la medida que llevan a cabo este tipo de función, tanto el Ejecutivo como la Legislatura ejercen, conforme a la ley y a la costumbre, diferentes grados de control sobre sus funciones. Friedman, *op. cit.*, págs. 557–558.

■ Las corporaciones públicas reciben mediante su estatuto habilitador cierto grado de independencia económica en cuanto a su presupuesto operacional. Se persigue por ese medio que, aparte de las asignaciones presupuestarias que puedan recibir del Estado, éstas procuren en todo o en parte generar su propio capital, ya sea mediante la emisión de obligaciones, préstamos o por medio de los ingresos que reciban de los bienes y servicios que ofrezcan. Hay que aclarar, sin embargo, que esta autonomía financiera recibe mayor o menor fiscalización por parte del Estado conforme el enfoque o política pública que a tales fines adopte el país bajo el cual opera la corporación pública.[7]

■ En Puerto Rico, el control gubernamental sobre las corporaciones públicas se plasma mediante las propias leyes habilitadoras de la corporación pública de que se trate y leyes que directa o indirectamente inciden sobre ésta.

---

[6] "[T]he very nature of the public enterprise, in all its major forms, implies some degree of governmental supervision, both on the administrative and on the financial plane." W. Friedman, *International Encyclopedia of Comparative Law*, Vol. XIII, Cap. 13, pág. 53.

[7] "The objective sought through establishing public corporations was not freedom from all governmental controls, but freedom from governmental restrictions unsuited to a business operation which stifle efficient operations." P. Teeguarden y D. Thomas, *A Public Corporation Model for Federal Forest Land Management*, 1985, Vol. 25, Núm. 2, págs. 373 y 379.

492

■ Además, el Art. III, Sec. 22 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 347, dispone que:

> Habrá un Contralor que será nombrado por el Gobernador con el consejo y consentimiento de la mayoría del número total de los miembros que componen cada Cámara. El Contralor reunirá los requisitos que se prescriban por ley; desempeñará su cargo por un término de diez años y hasta que su sucesor sea nombrado y tome posesión. *El Contralor fiscalizará todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios, para determinar si se han hecho de acuerdo con la ley.* Rendirá informes anuales y todos aquellos informes especiales que le sean requeridos por la Asamblea Legislativa o el Gobernador. (Énfasis suplido.)

■ Con el fin de darle vigencia a la citada disposición constitucional se aprobó la Ley Núm. 9 de 24 de julio de 1952, según enmendada, 2 L.P.R.A. sec. 72 y ss. Ésta creó la Oficina del Contralor. Mediante este estatuto se elaboraron los mecanismos a través de los cuales el Contralor lleva a cabo la labor fiscalizadora. Estas funciones "las ejercerá tanto con respecto a las cuentas, los fondos, los ingresos, los desembolsos y las propiedades del Gobierno como a los que se tuvieren en fideicomiso". 2 L.P.R.A. sec. 73. Las funciones fiscalizadoras del Contralor abarcan las operaciones de las corporaciones públicas.

Véanse, también, de forma ilustrativa en cuanto al control gubernamental, entre otras: Ley de Contabilidad del Gobierno de Puerto Rico, Ley Núm. 230 de 23 de julio de 1974 (3 L.P.R.A. sec. 283 y ss.); Ley del Procurador del Ciudadano (*Ombudsman*), Ley Núm. 134 de 30 de junio de 1977, enmendada por la Ley Núm. 6 de 16 de marzo de 1987 (2 L.P.R.A. secs. 701-726).[8]

---

[8] Distinto a las corporaciones públicas en Inglaterra u otros países europeos, en Estados Unidos mediante el *Government Corporation Control Act* de 1945, según enmendado, 31 U.S.C. sec. 9101 y ss., se provee un mecanismo para auditar y controlar el funcionamiento financiero de sus corporaciones públicas. Véase Brewer Carias, *op. cit.*, Sec. 55, págs. 86–90 y 166.

La intervención gubernamental en el desenvolvimiento de las corporaciones públicas obedece primordialmente a que, a pesar de la combinación de características públicas y privadas que hemos señalado, los fondos con que opera la entidad se consideran como públicos independientemente de que éstos no pasen a formar parte del presupuesto del Estado. Ante esto, hemos expresado que los fondos mediante los cuales se paga a los empleados de las corporaciones públicas provienen de fuentes gubernamentales y constituyen fondos públicos. *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467 (1982).

El Estado escoge la figura de la corporación pública como herramienta para implantar una política pública en particular cuando determina que por ese medio es el que con más alta probabilidad de eficiencia puede llevar a cabo un programa o servicio. Cabe señalar que gran parte de éstos están clasificados como servicios esenciales. Quiere esto decir que aunque las corporaciones públicas se erigen sobre ciertas bases de autonomía operacional, no por ello dejan de estar investidas de un alto interés gubernamental en que su funcionamiento sea de la calidad y eficiencia más alta posible y, por ende, que su funcionamiento esté protegido de toda interferencia innecesaria.

En cuanto a la interrogante de si los empleados de dichas corporaciones son o no empleados públicos, recientemente en *Pueblo v. Hernández Torres y Barreda*, 125 D.P.R. 560 (1989), expresamos en relación con los empleados de la Puerto Rico Telephone Co., una corporación público-privada:

> . . . [E]l hecho de que éstos no son parte del sistema central de personal, no altera su condición de empleados públicos. La Ley de Personal del Servicio Público de Puerto Rico[, 31 L.P.R.A. sec. 1301 y ss.,] expresamente excluye de la aplicación de la ley a todos los empleados de corporaciones públicas. Sin embargo, ésto no significa que sean empleados privados. Por el contrario, del lenguaje de la referida disposición lo que se desprende es que aunque éstos se consideran empleados públicos, por razones de política pública se decidió no someterlos a la aplicación detallada de la ley, aunque sí a los principios de mérito.

494

■ Así mismo, en nada se desmerece esta cualidad por el hecho de que en virtud del Art. II, Sec. 17 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, se les haya reconocido el derecho a la negociación colectiva.

■ Aunque en algunos países no se les considera como empleados públicos, en Puerto Rico toda la legislación que directa o incidentalmente alude a los empleados de las corporaciones públicas ha sido consistente en cuanto a su consideración como empleados públicos. Véanse, de modo ilustrativo: la ley que crea el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. secs. 761–788; el Art. 7(16) del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3022(16); la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico, Ley Núm. 12 de 24 de julio de 1985 (3 L.P.R.A. sec. 1801 y ss.).

El Informe Económico al Gobernador de 1984 y los datos preliminares del Informe de 1986 reflejan un alarmante aumento en la tasa de crecimiento de la deuda de los consumidores. Los datos relativos a esa materia según el último informe publicado para el período 1986–1987 señalan que "[a]l finalizar el año fiscal 1987, la deuda de los consumidores ascendió a $7,779.9 millones, cifra que representó un crecimiento de $1,534.8 millones ó 24.6 por ciento sobre la deuda de $6,245.0 millones del año fiscal 1986. Este crecimiento es superior al mostrado en el año fiscal 1986, que fue de $1,129.8 millones, ó 22.1 por ciento al comparar dicha deuda con la registrada en el año fiscal 1985".[9] Informe Económico al Gobernador de 1986–1987, Junta de Planificación de Puerto Rico, Parte VIII, pág. 18.

Consecuencia lógica de este comportamiento de consumo es que un número proporcional de empleados de corporaciones públicas estará comprendido dentro del universo de deudores

---

[9] Este Informe Económico al Gobernador de 1986–1987 revela el uso desmedido de las fuentes de crédito por parte del consumidor puertorriqueño y, por ende, la inminente necesidad de que los organismos concernidos elaboren un plan de acción para crear conciencia sobre los efectos del uso indiscriminado de las fuentes de crédito.

puertorriqueños cuyos sueldos estarían sujetos a embargo de permitirse el uso de este mecanismo procesal. Si a esto le añadimos el hecho de que los empleados de la A.A.A. ya se encuentran sujetos a una serie de descuentos[10] que incluyen aquellos provenientes de préstamos obtenidos dentro del ámbito laboral adquiridos usualmente a intereses más bajos que los del mercado regular, podemos deducir que esto los convierte, en múltiples ocasiones, en deudores de alto riesgo para las empresas privadas conocidas como financieras. Estas circunstancias aumentan la probabilidad del uso del mecanismo de embargo de sueldo, con el consecuente efecto detrimental y nocivo para la corporación pública.

Concorde a todo lo anterior, extendemos la protección contra el uso del mecanismo procesal de embargo —según acogido por nuestra jurisprudencia en cuanto a los sueldos de los empleados del sistema central de gobierno— a los sueldos devengados por los empleados de las corporaciones públicas. Resolver en contrario sería agregar funciones extrañas y ajenas a las tareas de los funcionarios de las corporaciones públicas, ya que éstos tendrían que llevar a cabo todas las gestiones relacionadas con el proceso de descuentos. Los gastos incurridos se pagarían con fondos públicos en beneficio del interés exclusivo de una empresa privada y el tiempo invertido por los funcionarios se le restaría a la gestión pública. Indiscutiblemente, esto, aparte de ser contrario a los intereses del Estado, causa una interferencia injustificada e indebida en la ejecución de las tareas de la agencia y un desvío impermisible de fondos públicos. "[L]as actividades gubernamentales no deben estar sujetas a la inconveniencia de estos procedimientos que interfieren con el descargo de funciones públicas en detrimento del bien común." *Stump Corp. v. Tribunal*

---

[10] Entre ellos se encuentran Seguro Social, Contribuciones sobre Ingresos, Retiro, A.E.G., Ahorros, Préstamos A.E.G., Seguro de Vida, Cuotas de Unión, Seguro de Cáncer, Préstamo de Retiro, Préstamo Unión, Acción Cooperativa A.A.A., Depósitos Cooperativa A.A.A., Préstamo Cooperativa A.A.A., Seguro de Vida Cabali, Seguro Médico, Asoc. Empleados (viajes), Préstamo Banco Vivienda y otros.

*Superior,* supra, pág. 181. Este procedimiento también tiene el efecto de mermar la motivación y entusiasmo con que deben servir a nuestro pueblo estos empleados. *Padrón Rivera v. Cordovés, Juez,* supra.

■ Les corresponde a las entidades financieras privadas tomar las medidas necesarias para garantizar la idoneidad de sus deudores, minimizando así la posible delincuencia en el pago de los préstamos.

Por todo lo antes expuesto, *se dictará sentencia que revoque las dictadas por el Tribunal Superior, Sala de Ponce, en los casos CS-86-2084 y CS-86-1909 y por el Tribunal Superior, Sala de Bayamón, en el caso CS-86-3080, y que confirme las emitidas por el Tribunal Superior, Sala de San Juan, en los casos PE-86-805 y PE-86-562, por el Tribunal Superior, Sala de Humacao, en el caso CS-86-732 y por el Tribunal Superior, Sala de Caguas, en el caso CS-86-1071.*

El Juez Presidente Señor Pons Núñez hace constar que aun cuando disintió de la mayoría en *Pueblo v. Hernández Torres y Barreda,* 125 D.P.R. 560 (1989), por las razones expresadas en su disenso, las cuales reafirma, vota conforme con la opinión del Tribunal en este caso por ser la misma consecuencia lógica de la determinación mayoritaria del Tribunal en dicho caso. El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Hernández Denton se inhibió.