Hernández Torres, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
La Autoridad de los Puertos, en adelante peticionaria, recurre ante nos de una orden dictada por el Tribunal de Primera Instancia, Sala de Fajardo (Hon. Lidia E. Convertier, Jueza), el 26 de agosto de 2003 y notificada el 11 de septiembre de 2003. Mediante dicha Orden, el Tribunal de Primera Instancia autorizó el retiro de los fondos embargados por la parte demandante aquí recurrida, en ejecución de una sentencia dictada el 8 de febrero de 2000, notificada el 28 de febrero de 2000.
Para dicha determinación, el Tribunal de Primera Instancia señaló que la sentencia no había sido satisfecha en su totalidad, ascendiendo a la suma de $50,149.77 más los intereses devengados, más los gastos en $800.00 y honorarios de abogado de $1,000.00. Todo lo anterior como pago por la hora de tomar alimentos la cual trabajaba el demandante aquí recurrido, José A. Soto Millán.
La peticionaria solicitó la paralización del embargo el 19 de junio de 2003, alegando que la sentencia había sido satisfecha desde julio de 2001, haciéndose entrega del pago al demandante aquí recurrido.
La parte recurrida procedió con el embargo, por lo que la peticionaria impugnó el mismo. El 26 de septiembre de 2003, la peticionaria presentó "Moción de Reconsideración" a la autorización del retiro de los fondos, pero el Tribunal de Primera Instancia no se expresó sobre la misma.
*887 Con el beneficio de los escritos de las partes, luego de estudiado el derecho y la jurisprudencia aplicable, expedimos el auto de certiorari solicitado y revocamos la orden o resolución recurrida.
I
El señor José Soto Millán, aquí recurrido, junto a su esposa, presentaron demanda el 26 de febrero de 1997, contra la peticionaria Autoridad de los Puertos, además de Hermán Sulsona como Director Ejecutivo y la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas de Puerto Rico, en adelante HEO. Mediante la misma solicitó un injunction, daños y perjuicios por despido injustificado y otras acciones civiles. Los demandados presentaron sus respectivas contestaciones a la demanda y luego de varios trámites procesales se celebró vista en su fondo y el 8 de febrero de 2000, el Tribunal de Primera Instancia dictó sentencia. En la misma desestimó algunas causas de acción instadas, incluyendo la de discrimen y las reclamaciones contra la codemandada HEO.
El Tribunal de Primera Instancia determinó que el aquí recurrido fue despedido injustificadamente sin radicarle cargos ni dársele el debido proceso de ley, procediendo por ser un empleado público a ordenar su reinstalación en el empleo.
También ordenó el Tribunal de Primera Instancia el pago con el correspondiente interés legal de los salarios dejados de percibir desde su despido hasta la sentencia.
El 31 de agosto de 2000, notificada el 8 de septiembre de 2000, el Tribunal de Circuito de Apelaciones confirmó la sentencia del Tribunal de Primera Instancia. El Tribunal Supremo no expidió el auto de certiorari presentado.
Al advenir final y firme la sentencia, el recurrido, por conducto de su representación legal, solicitó el cumplimiento de la sentencia. El recurrido fue reinstalado en su empleo el 1 de mayo de 2001, procediéndose a hacer cómputos de los salarios dejados de devengar desde su cesantía hasta su reinstalación, incluyéndose las vacaciones acumuladas en dicho término y el bono de Navidad. Alega la recurrente que dichos cómputos fueron evaluados y aprobados por la representación legal del recurrido antes de efectuarse el pago. Luego se procedió a pagar las sumas de $138,497.50 por los salarios anuales, $12,305.27 de bono de Navidad y $19,279.64 de intereses, totalizando la cantidad de $170,082.41. De esa cantidad se hicieron deducciones por $39,472.50 y otra de $3,000.00, entregándose al aquí recurrido el cheque número 89239 del 26 de junio de 2001, por la cantidad de $127,609.91, el cual fue endosado y depositado en su cuenta. De igual forma, se procedió con el pago de los honorarios concedidos.
El aquí recurrido, por conducto de otro representante legal, presentó el 22 de mayo de 2003, es decir un (1) año y once (11) meses después, una "Solicitud de Ejecución de Sentencia", alegando que se le adeudaba la suma de $50,149.77, más intereses, además de $800.00 de_gastos de.ejecución y $1,000.00 de honorarios de abogado.
Alega la parte peticionaria que al momento de radicar ante nos el presente recurso, no se le había notificado ese escrito, aunque en dicha moción se hizo constar que se le notificaba a ellos. El Tribunal de Primera Instancia expidió el Mandamiento de Embargo el 6 de junio de 2003, por la suma de $51,949.77.
Posteriormente, el depositario designado, señor Francisco del Río, se comunicó con la peticionaria, alegadamente proveyéndole toda la documentación relacionada al pago de la sentencia; pero al advenir en conocimiento de la expedición del mandamiento de embargo, la peticionaria presentó "Moción Urgente Solicitando Paralización de Embargo y Solicitud de Vista", el 19 de junio de 2003. Adjuntó a dicha moción la alegada evidencia del pago realizado.
No obstante, el 20 de junio de 2003, el recurrido procedió con el embargo de una cuenta alegadamente *888 restricta a fondos federales regulados por la Agencia Federal de Aviación para el uso exclusivo del Aeropuerto Internacional de Puerto Rico.
El 23 de junio de 2003, la peticionaria presentó "Moción Urgente Impugnando el Embargo y Solicitando la Devolución de Fondos Públicos" a la vez que reiteraban haber satisfecho la sentencia. El recurrido presentó "Réplica a Moción Urgente" el 25 de junio de 2003, aduciendo que era académica la solicitud del peticionario, ya que se había procedido con el embargo. Además, alegó que el peticionario había sido notificado y que fue indolente.
El 1 de julio de 2003, se dictaron varias órdenes paralizando el embargo provisionalmente, ordenando notificación al alguacil y citando a vista para el 6 de agosto de 2003.
El recurrido, mediante un Escrito Suplementario, expresó al Tribunal que la peticionaria estaba equivocada al aducir que los fondos embargados a dicha agencia eran públicos, ésto dado que la peticionaria es una corporación pública y "los fondos de este ente corporativo no son ni han sido públicos y gozan de la misma naturaleza de los de cualquier otra persona jurídica".
La peticionaria presentó "Dúplica a Réplica a Moción Urgente" donde reiteraban que aún no habían recibido la "Solicitud de Ejecución de Sentencia" y señalando además que los fondos de las corporaciones públicas son fondos públicos. Expresaron también que la sentencia dictada era clara en cuanto al remedio concedido y los no concedidos, por lo que el aquí recurrido no podía acudir tres (3) años más tarde al tribunal para pretender enmendar las determinaciones y adjudicarse remedios no concedidos, luego de cobrar la sentencia.
La aquí peticionaria cuestionó además la interpretación del recurrido en el sentido de que estando exentas las corporaciones públicas de la Ley de Personal, también lo están de la Ley Núm. 379 de 15 de mayo de 1948, 29 L. P.R.A. § 271 et. seq., y por consiguiente, le es inaplicable la norma de que para recibir compensación por el período de tomar alimentos es requisito indispensable que haya trabajado durante el mismo. Sostuvo el recurrido que procedía el pago triple del período de alimento por lo "claro" de su convenio colectivo.
En cuanto a la alegación de que el embargo era de fondos públicos, el recurrido señaló que el Tribunal podía tomar conocimiento judicial de la solvencia de la Autoridad de Puertos y que no se interfería con fondos operacionales.
El 1 de agosto de 2003, mediante "Moción Informativa y Solicitud de Renuncia de Representación Legal", el aún abogado de récord del demandante aquí recurrido compareció y reconoció ante el Tribunal que la Sentencia dictada el 8 de febrero de 2000 había sido satisfecha por la aquí peticionaria. El 6 de agosto de 2003, el abogado reiteró su solicitud de renuncia la que fue aceptada el 26 de agosto de 2003.
Luego de someterse informes de un perito contador, así como una opinión vertida en un "Escrito Suplementario" del 22 de agosto de 2003, realizado por el Ledo. Ruy Delgado Zayas a solicitud del aquí recurrido, el Tribunal dictó Orden, autorizando el embargo.
Ante nos, la peticionaria señala la comisión de los siguientes errores por parte del Tribunal de Primera Instancia.

“Erró el Honorable Tribunal de Primera Instancia al ordenar el embargo de fondos en ejecución de una sentencia cuando la misma fue satisfecha de conformidad con sus términos y así lo reconoce, incluso, el representante legal de la parte demandante, permitiendo con su orden una enmienda a las determinaciones de la sentencia tres años luego de dictada la misma.

*889
Erró el Honorable Tribunal de Primera Instancia al ordenar el embargo y desembolso de fondos en ejecución de una sentencia, acogiendo un informe pericial fundamentado en errores de hecho y contrario al derecho aplicable. ”

Veamos la norma jurídica y el derecho aplicable.
II
A. La doctrina de aceptación como finiquito
La doctrina de aceptación como finiquito ("accord and satifaction") precisa el concurso de los siguientes elementos: (1) una reclamación ilíquida o sobre la cual exista controversia bonafide-, (2) un ofrecimiento de pago por el deudor; y (3) una aceptación del ofrecimiento de pago por el acreedor. H.R. Elec., Inc. v. Rodríguez, 114 D.P.R. 237 (1983).
De acuerdo con la doctrina de aceptación como finiquito y la jurisprudencia, el ofrecimiento de pago tiene que ir acompañado por declaraciones y/o actos que claramente indiquen el pago total, completo y definitivo de la deuda existente entre ambos; ello púede acreditarse por declaraciones o actos que así lo indiquen; inclusive que el acreedor así lo entendió.
Bajo la doctrina de aceptación como finiquito, la aceptación por parte del acreedor no se satisface con la simple retención del cheque por éste. En adición (sic) a la nueva retención, tiene que haber unos actos afirmativos, posteriores al recibo del cheque que claramente indiquen la "aceptación de la oferta". El mismo efecto tendría una retención inexplicada por tiempo inusitado. H.R. Elec., Inc. v. Rodríguez, supra.
De otra parte, el Tribunal Supremo de Puerto Rico, en A. Martínez & Co. v. Long Court Co., 101 D.P.R. 830, 833 (1923), sentó el principio de que no se puede aceptar un cheque en pago total de una deuda a la par que se intenta alterar su naturaleza expresando que se acepta como pago parcial.
B. El embargo y los fondos públicos
El embargo es un remedio provisional que puede ser dictado por un tribunal, a solicitud del reclamante, para asegurar la efectividad de una sentencia. Este remedio provisional puede concederse en todo pleito antes o después de dictarse la sentencia. Este procedimiento de embargo, al igual que la prohibición de enajenar, se rigen mediante las Reglas 56.2 a 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881 (1993).
Si el trámite del embargo se hace una vez dictada la sentencia, la Regla 56, supra, señala que no se requiere la prestación de fianza. Independientemente del momento en que se gestiona el embargo, la cuantía del mismo está limitada a la cuantía reclamada en la demanda o la dictada en la sentencia. Carlo v. Corte, 58 D.P.R. 889, 894-895 (1941).
Ahora bien, los fondos con que operan las corporaciones públicas se consideran como públicos, independientemente de que éstos no pasan a formar parte del presupuesto del Estado. Librotex, Inc. v. A.A.A., 138 D.P.R. 938 (1995).
Aunque las corporaciones públicas operan de forma autónoma, éstas no pierden su cualidad de instrumentalidad gubernamental, que ha sido creada para responder a propósitos de utilidad pública. Librotex, Inc. v. A.A.A., supra.
El Tribunal Supremo de Puerto Rico ha sido consistente en todo lo anteriormente expresado y ha señalado *890 que no hay duda, por lo tanto, de que la Autoridad de las Fuentes Fluviales de Puerto Rico o la Autoridad de Energía Eléctrica de Puerto Rico es una corporación pública que goza de una estructuración que la asemeja a una corporación privada, disfrutando así de unas ventajas que esa dualidad le permite. Esta dualidad o desdoblamiento no causa, sin embargo, que los fondos con que paga a sus empleados, provengan de "fuente gubernamental o no", constituyan "fondospúblicos". Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982).
Las disposiciones sobre aseguramiento de sentencia en la Regla 56.1 de Procedimiento Civil, supra, deben interpretarse con amplitud y liberalidad, concediendo el tribunal aquella medida que mejor asegure la reclamación del demandante y menos inconvenientes ocasione al demandado. Román Fonseca v. Ruiz Gutiérrez, opinión de 6 de agosto de 2003,2003 J.T.S. 131.
El Tribunal Supremo de Puerto Rico ha establecido que los bienes y fondos públicos están exentos de embargo. En cuanto a las corporaciones públicas, ha establecido ciertos límites y consideraciones por el efecto negativo que tienen sobre la capacidad económica de la corporación para poder llevar a cabo sus funciones. Arraiza v. Reyes, 70 D.P.R. 614, 618 (1949); Librotex v. A.A.A, supra.
En Román Fonseca v. Ruiz Gutiérrez, supra, el Tribunal Supremo de Puerto Rico expresó que no procede un embargo o secuestro de fondos públicos para asegurar el cumplimiento de un obligado por una sentencia, aunque los fondos estén disponibles para el pago de acreedores del gobierno. Hasta que la agencia concernida pague a la persona con derecho a recibir el pago o hasta que la agencia esté obligada a hacer el pago al vencimiento del término para realizarlo, el dinero no puede ser considerado como bienes de la persona con derecho al pago, sino fondos públicos no embargables. A base de toda esa jurisprudencia, podemos colegir que existen unos límites o parámetros establecidos por el Tribunal Supremo para salvaguardar tanto los intereses de los acreedores de una sentencia, como el funcionamiento de la corporación pública. Por lo tanto, cada situación debe atenderse individualmente.
III
En el recurso ante nos, debemos precisar en primer lugar que la sentencia advino final y firme en el caso José A. Soto Millón v. Autoridad de los Puertos, el Director Ejecutivo Hermán Sulsona y la Hermandad de Empleados de Oficina y Ramas Anexas, Civil Núm. NPE1997-0012, luego de que este Tribunal de Circuito de Apelaciones confirmara la sentencia del Tribunal de Primera Instancia el 31 de agosto de 2000, notificada el 8 de septiembre de 2000, en la apelación KLAN-2000-00359.
De dicha determinación se acudió al Tribunal Supremo y éste no expidió el auto de certiorari. De esta manera se ordenó la reinstalación y el pago correspondiente al demandante aquí recurrido. Se ordenó, además, satisfacer el correspondiente interés legal de los salarios dejados de percibir desde su despido hasta la sentencia.
El 1 de mayo de 2001, el recurrido fue reinstalado en su puesto y se procedió a hacer los cómputos de los salarios dejados de devengar desde su cesantía hasta su reinstalación, incluyéndose las vacaciones acumuladas en dicho tiempo y el bono de Navidad, además, de los respectivos aumentos salariales. Todos esos cómputos fueron evaluados y posteriormente aprobados por la parte demandante aquí recurrida a través de su entonces representación legal.
De esa forma, se pagaron las sumas de $138,497.50 por salarios anuales, $12,305.27 de bono de Navidad, y $19,279.64 de intereses, para un total de $170,082.41. Se hicieron las deducciones correspondientes y al demandante aquí recurrido se le entregó el cheque número 89239 del 26 de junio de 2001, por la cantidad neta de $127,609.91. Dicho cheque fue endosado y depositado en su cuenta. También se procedió a pagar los honorarios impuestos por el Tribunal y todo lo anterior consta en los documentos ante nos.
Luego de casi tres (3) años de advenir final y firme la sentencia, y casi dos (2) años de haberse pagado lo *891 acordado por las partes, se solicita la ejecución de sentencia por alegadamente adeudarse una parte de la compensación.
No tenemos duda alguna de que dicha solicitud es totalmente improcedente.
La sentencia final y firme fue satisfecha en su totalidad y admitido no sólo por la representación legal que tenía el recurrido en ese momento, sino por aceptación de él mismo.
La aceptación, endoso y depósito en su cuenta de la cantidad acordada constituye un acuerdo en finiquito "accord and satisfaction". Evidentemente se configuraron los elementos que la doctrina ha establecido a saber; (1) una reclamación sobre la cual existía controversia bonafide; (2) un documento de pago por el deudor; y (3) una aceptación del ofrecimiento de pago por el acreedor.
Hubo actos claramente indicativos que el deudor (la peticionaria) y el acreedor (recurrido) llegaron a un acuerdo en cuanto a la cuantía luego de advenir final y firme la sentencia.
No es posible que casi tres (3) años después se pretenda embargar en aseguramiento de sentencia, alegándose que el pago en su totalidad no fue realizado. Los argumentos del recurrido no nos convencen en lo absoluto, máxime luego de pasado tanto tiempo entre la sentencia y la solicitud de embargo. Por lo tanto, entendemos que el primer error señalado por el recurrente fue cometido por el Tribunal de Primera Instancia.
Aunque lo anterior es lo medular a nuestro juicio, pues ciertamente si no existe una deuda como tal y se ha cumplido con la sentencia, el embargo como mecanismo preventivo para el pago del mismo es inoficioso, creemos pertinente expresamos en tomo a asunto planteado ante nos.
Las corporaciones públicas, aunque operan como negocios privados, tienen una finalidad pública y se nutren de fondos públicos. Esta realidad no cambia por el hecho de que tengan capacidad jurídica para demandar y ser demandadas. Tienen una función dual. Son parte del gobierno de Puerto Rico y sólo para darle mayor flexibilidad su estructura opera como una corporación privada.
Los bienes y fondos públicos han estado exentos de embargo, y aunque con ciertas limitaciones, se ha extendido a las corporaciones públicas. Esto debido a que éstas operan de forma un tanto autónomas, pero no dejan de ser organismos o instmmentalidades públicas y sus fondos se consideran igualmente públicos.
En el caso ante nos, se embarga específicamente una cuenta que, según la peticionaria, responde a fondos federales con un propósito específico, lo que le puede acarrear problemas operacionales y/o señalamiento de uso indebido de fondos.
Coincidimos con la peticionaria en que es importante dilucidar si se afectan y como las operaciones de esa corporación pública, no pudiendo recaer esta decisión en la parte que promueve el embargo.
Por todo lo anterior, aun en el supuesto de que existiera la deuda, entendemos que el Tribunal de Primera Instancia también cometió el segundo error señalado por la peticionaria.
IV
Por los fundamentos anteriormente expresados, se expide el auto de certiorari, se revoca la resolución del Tribunal de Primera Instancia, pues no procedía el embargo, ya que la sentencia había sido ejecutada en su totalidad y según fue emitida.
El Juez Martínez Torres concurre con el resultado sin opinión escrita.
*892 Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General