LIBROTEX, INC., y LIBRERÍA Y EDITORIAL LEA, INC., demandantes y peticionarios, *v.* AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO Y OTROS, demandados y recurridos.

*Número:* CE-94-395          *Resuelto:* 14 de julio de 1995

*Rafael A. Vilá Carrión*, abogado de los peticionarios; *Luis Berríos Amadeo*, de *Cancio, Nadal, Rivera & Díaz*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

¿Es válido el embargo de fondos de la Autoridad de Acueductos y Alcantarillados para satisfacer una sentencia final y firme en su contra? ¿Existe algún remedio alterno?

I

En 1992 las compañías Librotex, Inc. (en adelante Librotex) y la Librería y Editorial Lea, Inc. (en adelante Lea, Inc.) obtuvieron una sentencia contra la Autoridad de Acueductos y Alcantarillados (en adelante Autoridad) por $2,407,232. Final y firme el dictamen, en ejecución, solicitaron el embargo "de cuentas bancarias, y/o efectivo o fondos en poder de terceros y/o efectivo localizado en las oficinas y/o sucursales de la [Autoridad]". Apéndice II, pág. 1. Dictada la correspondiente orden por el Tribunal Superior, Sala de San Juan (Hon. Carmen Celinda Ríos, Juez), Librotex y Lea, Inc. comenzaron a ejecutarla en el Citibank, N.A., sobre $435,354.91. Con urgencia, la Autoridad compareció ante el tribunal e impugnó su validez. Adujo que eran *bienes públicos* pertenecientes a una *entidad gubernamental*, revestidos de un interés público de tal magnitud que impedía que fuesen embargados, aun en la ejecución de sentencia.

Como consecuencia, el referido foro de instancia dejó sin efecto la orden. Subsiguientemente, previa vista en reconsideración, mantuvo su dictamen. Resolvió que en las cir-

cunstancias de este caso era "inescapable la conclusión de que el embargo en cuestión afecta[ba] fondos públicos destinados a fines esenciales". Apéndice IV, pág. 6. Es decir, creaba "una consecuencia de no menor envergadura, [puesto que interfería] con las funciones de la Autoridad". Íd.

No conforme, a solicitud de Librotex y Lea, Inc., revisamos.

## II

En esencia, los peticionarios sostienen que el tribunal de instancia incidió al dejar sin efecto el embargo.

Aducen que al crearse la corporación pública demandada, la Asamblea Legislativa le confirió autonomía fiscal y operacional respecto con el Gobierno Central que le concedía, en consecuencia, una forma corporativa y poderes suficientes para operar como un negocio privado. Argumentan que la Ley de Acueductos y Alcantarillados de Puerto Rico le reconoció, *primero*, la facultad de demandar y ser demandada, con la intención clara de la legislatura de que estuviese sujeta a procedimientos judiciales como cualquier empresa privada y, *segundo*, que así creada —en cuanto a dicha corporación— el Estado renunció a la inmunidad soberana y, por consiguiente, a la protección que disfruta contra los embargos. Invocan a *F.H.A. v. Burr*, 309 U.S. 242 (1940), seguido en *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 834 esc. 9 (1988), y en *Primate Protection League v. Tulane Ed. Fund*, 500 U.S. 72 (1991), y aplicado originalmente por este Foro en *Arraiza v. Reyes; León, Interventor*, 70 D.P.R. 614, 615 (1949).

A su amparo, argumentan que la Autoridad —como cuerpo corporativo autónomo con una estructura análoga a la de una corporación privada— *está sujeta incondicional-*

*mente* a los procedimientos judiciales de embargo. No tiene razón.

■ Ciertamente, la Ley Núm. 40 de 1ro de mayo de 1945, según enmendada, 22 L.P.R.A. sec. 141 *et seq.*, concedió a la Autoridad, en lo pertinente, la facultad para *"demandar y ser demandada como tal corporación*, excepto que no podrá ser demandada por daños y perjuicios causados por la impureza, irregularidad o insuficiencia real o alegada del agua servida por ella y excepto que no se permitirá la venta judicial de propiedades de la Autoridad". (Énfasis suplido.) 22 L.P.R.A. sec. 144(c).

■ No obstante, aunque es una realidad que las corporaciones públicas —como la Autoridad— operan de forma autónoma, "éstas no pierden su cualidad de instrumentalidad gubernamental, creada para responder a *propósitos de utilidad pública*". (Énfasis suplido.) *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478, 491 (1990). En ese sentido, la Ley de Acueductos y Alcantarillados de Puerto Rico dispone que "[e]l ejercicio por la Autoridad de los poderes conferidos por las secciones 141 a 161 de este título se estimará y juzgará como una *función gubernamental esencial*". (Énfasis suplido.) 22 L.P.R.A. sec. 142. Más aún, "los fondos con que opera la entidad se consideran como públicos, independientemente de que éstos no pasen a formar parte del presupuesto del Estado". *Commoloco of Caguas, Inc. v. Benítez Díaz*, supra, pág. 493. Compárese, *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467 (1982).

■ A tono con ese diseño, hemos resuelto que la Legislatura ha otorgado poderes operacionales suficientes a la Autoridad como para considerarla "tan sujeta a procedimientos judiciales como en circunstancias análogas lo estaría cualquier empresa privada, *siempre que no interfiera con la ejecución de sus funciones ejecutivas*". (Énfasis

suplido.) *Arraiza v. Reyes; León, Interventor*, supra, pág. 618.

### III

En este caso, los peticionarios, como acreedores de la Autoridad, alegan que el embargo hasta la cantidad de $2,514,650.80 *no desviaría fondos públicos hacia fines ajenos a las responsabilidades que tiene la Autoridad*, puesto que se le estaría obligando a cumplir con una responsabilidad que contrajo ex delicto. No podemos avalar dicho enfoque.

■ Tomamos conocimiento judicial de la grave crisis financiera por la cual atraviesa la Autoridad debido al cúmulo de múltiples factores; entre ellos, la sequía que desde hace un (1) año, casi de forma ininterrumpida, ha aquejado al país. Autorizar el embargo interrumpiría el ya afectado servicio vital que dicha entidad de utilidad pública presta al pueblo de Puerto Rico. La suma que ha de ser embargada es considerablemente *alta*. Si bien reconocemos que los peticionarios son acreedores por sentencia de la Autoridad, las consecuencias extraordinarias que el embargo tendría sobre dicha entidad requieren que reconozcamos esta protección. No incidió, pues, el tribunal de origen al dejar sin efecto el embargo.

Ahora bien, lo expuesto no significa que las peticionarias carezcan de remedio alguno y estén ad perpétuam a la merced y exclusiva voluntad de la Autoridad. Una cosa es el *embargo* de sus fondos operacionales, con el consabido trastoque inmediato que representa, y otra que, como remedio compatible alterno de carácter equitativo, simultáneamente ordenemos al Director Ejecutivo, a la Junta de Gobierno de la Autoridad y a los demás funcionarios concernidos a que en el próximo presupuesto funcional de la Autoridad se incluya una partida para satisfacer la *totalidad* de la sentencia que nos ocupa, más los intereses de-

vengados hasta el momento cuando se realice su pago. Entendemos que este remedio haría justicia cumplida a los peticionarios, a la vez que mantendría a la Autoridad libre de gravosas y monumentales cargas inmediatas que podrían desestabilizar su importante gestión pública, principalmente hoy que vivimos un momento de crisis en la suficiencia de los abastos de agua. "Las aportaciones de la labor judicial al conglomerado social se reconocen fácilmente en tiempos de crisis y cambio social en los que, al cuestionarse la vigencia de ciertas normas generales, se impone una mayor dosis de creatividad y remodelación de la materia jurídica." A. Díaz Suárez, *Los jueces ante la crisis de la justicia*, 523 Rev. Gen. Der. 1669, 1673 (1988).

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López emitió una opinión concurrente, a la cual se unió la Juez Asociada Señora Naveira de Rodón. El Juez Asociado Señor Hernández Denton emitió una opinión concurrente y disidente.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Aun cuando *concurrimos* con el *resultado* a que se llega en la opinión mayoritaria emitida —ello debido a los hechos particulares, y específicos, del mismo— *no* podemos avalar la norma general, *extremadamente amplia*, que establece el Tribunal en el día de hoy, a los efectos de que no procede, *en ningún caso*, el embargo judicial de los fondos de la Autoridad de Acueductos y Alcantarillados (en adelante A.A.A.) por parte de un acreedor por sentencia de la misma; norma general que afecta, *y es extensiva*, no sólo a *todos* los acreedores por sentencia de la A.A.A., sino que a *todos* los acreedores por sentencia de las *restantes* corpora-

ciones públicas que operan en nuestro País, *no importa* la cuantía de los créditos judiciales de los referidos acreedores.

## I

Expedimos el correspondiente recurso de *certiorari* para revisar una resolución emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, mediante la cual dicho foro judicial *no* le permitió a las demandantes peticionarias, Librotex, Inc. y Librería y Editorial Lea, Inc., embargar —en ejecución de una sentencia final y firme que dichos demandantes habían obtenido contra la A.A.A. por la suma de $2,407,232— unos fondos de la A.A.A., depositados los mismos en el Banco Citibank, N.A.

En el recurso de *certiorari* que radicaron dichas demandantes peticionarias ante este Tribunal, le imputaron al foro de instancia haber errado al:

...DECLARAR ILEGAL EL EMBARGO DE FONDOS PRO-PIEDAD DE LA AUTORIDAD DE ACUEDUCTOS Y ALCAN-TARILLADOS POR EL MERO HECHO DE CONSIDERARSE ÉSTOS COMO FONDOS PÚBLICOS, IGNORANDO LA IN-TENCIÓN LEGISLATIVA AL CREARSE DICHA AGENCIA, DE QUE ÉSTA ESTUVIESE SUJETA A PROCEDIMIENTOS JUDICIALES DEL MISMO MODO QUE LO ESTÁ UNA COR-PORACIÓN PRIVADA, Y; AL CONCLUIR QUE DICHO EM-BARGO INTERFERÍA INDEBIDAMENTE CON EL DESEM-PEÑO DE LAS FUNCIONES EJECUTIVAS DE ESA AGENCIA. Petición de *certiorari*, pág. 7.

## II

La "doctrina de la inmunidad del soberano", principio firmemente establecido en el derecho angloamericano, postula que el Estado no responde por los daños ocasionados por sus oficiales, agentes o empleados en el desempeño de sus funciones. La misma, de ordinario, impide que se inste un procedimiento judicial contra el Estado a menos que

éste, mediante legislación al efecto, haya consentido a ello.(¹)

La Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. sec. 3077 *et seq.*, autorizó la presentación de demandas contra el Estado Libre Asociado de Puerto Rico en cuanto a: (1) acciones por daños y perjuicios, a la persona o a la propiedad, causadas por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo, *interviniendo culpa o negligencia*; (2) acciones para reivindicar propiedad mueble e inmueble, o derechos sobre las mismas, con o sin resarcimiento de perjuicios por los daños causados en dicha propiedad, o por sus rentas y utilidades y para deslindes de fincas rústicas, y (3) acciones civiles en que la cuantía reclamada no exceda de setenta y cinco mil (75,000) dólares de principal, y que se funden en la Constitución o en cualquier ley de Puerto Rico, o en cualquier reglamento de algún departamento o división del Estado o en algún contrato expreso o tácito con el Estado.(²)

En el caso de las acciones por daños y perjuicios a la persona o a la propiedad, *causados por acciones u omisiones interviniendo culpa o negligencia*, la referida Ley de Reclamaciones y Demandas contra el Estado establece unos *límites* a la responsabilidad pecuniaria del Estado. En *primer* lugar, limita a la cantidad de setenta y cinco mil dólares ($75,000) la responsabilidad del Estado cuando se trata de un solo reclamante con una sola causa de acción, y

---

(¹) La referida doctrina fue extendida a nuestro ordenamiento por fíat judicial. Véase *Porto Rico v. Rosaly*, 227 U.S. 270 (1913). Para una exposición más detallada sobre el trasfondo histórico y el desarrollo de dicha doctrina en Puerto Rico, véase *Defendini Collazo et al. v. E.L.A., Cotto*, 134 D.P.R. 28 (1993).

(²) Ya en 1916, mediante la aprobación de la Ley Núm. 76 de 13 de abril, 32 L.P.R.A. sec. 3061 n., el Estado había prestado su consentimiento para que se le demandara en acciones por daños y perjuicios basados en contratos y en acciones de reivindicación de bienes muebles o inmuebles o derechos sobre los mismos. *La mencionada Ley Núm. 76 no permitía que se demandara al Estado por daños y perjuicios extracontractuales.*

en *segundo* lugar, en casos que se causen daños a más de una persona, o hubiese más de una causa de acción, impone un límite de ciento cincuenta mil dólares ($150,000). Estos límites responden al impacto económico que en el fisco tienen las reclamaciones contra el Estado Libre Asociado. *Defendini Collazo et al. v. E.L.A., Cotto*, ante. Es de notar que en *Defendini Collazo et al. v. E.L.A., Cotto*, ante, resolvimos que la Ley de Reclamaciones y Demandas contra el Estado, en tanto y en cuanto impone unos límites a la responsabilidad económica del Estado, *no* adolece de vicio constitucional alguno; esto es, sostuvimos la constitucionalidad de los referidos límites.

De conformidad con el Art. 7 de la referida ley, 32 L.P.R.A. sec. 3082, el Estado satisfacerá prontamente cualquier fallo en su contra hasta los límites antes señalados de setenta y cinco mil dólares ($75,000) y ciento cincuenta mil dólares ($150,000). Si se tratase del pago de una suma de dinero, y no fuese posible hacerlo por no existir fondos a tal fin en el presupuesto corriente, se hará la correspondiente asignación de fondos para su pago en la parte del presupuesto general de gastos del año siguiente del departamento o agencia correspondiente.

## III

Las corporaciones públicas, por su parte, han recibido un *trato distinto* al que tradicionalmente han recibido los distintos departamentos ejecutivos del Estado, *en lo que respecta tanto a su organización como a su responsabilidad civil por los daños y perjuicios que causan sus agentes, oficiales u empleados en el descargo de sus funciones oficiales.* En ese sentido, el Art. 4 de la citada Ley Núm. 104 establece que sus disposiciones serán aplicables únicamente a aquellas corporaciones públicas independientes cuya facultad para demandar y ser demandados no esté prevista o contemplada por otras leyes. 32 L.P.R.A. sec. 3079.

Como es sabido, las corporaciones públicas "se crearon con diversos propósitos, entre otros, para reducir los costos, mejorar los servicios ofrecidos por el Estado y proveer la infraestructura necesaria para el crecimiento industrial". *McCrillis v. Aut. Navieras de P. R.*, 123 D.P.R. 113, 127 (1989). Éstas surgieron como respuesta al deseo de agilizar y promover la efectividad en la obra pública ante la complejidad de funciones que confrontaron los gobiernos a partir de la Primera Guerra Mundial. *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478 (1990); *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982).

Aun cuando reconocemos que puede existir una gran variedad de corporaciones públicas, las mismas tienen, como regla general, personalidad jurídica distinta y separada del Estado Libre Asociado y han sido dotadas de facultades y poderes que le confieren cierta flexibilidad e independencia del Gobierno central.[3] Ahora bien, hay que mantener presente que las corporaciones públicas *no* pierden su cualidad de instrumentalidad gubernamental, creada para responder a propósitos de utilidad pública, a pesar de la autonomía e independencia que las caracteriza. *Commoloco of Caguas, Inc. v. Benítez Díaz*, ante. En consecuencia, los fondos con que operan estas entidades corporativas se siguen considerando como públicos, independientemente de que éstos no pasen a formar parte del presupuesto general del Estado. Íd.

En *Commoloco of Caguas, Inc. v. Benítez Díaz*, ante,[4] págs. 490–493, expresamos, *en lo pertinente*, lo siguiente:

---

[3] Distinto a las corporaciones públicas, como regla general, un departamento ejecutivo no tiene personalidad jurídica separada y distinta del E.L.A. *Pagán et al. v. E.L.A. et al.*, 131 D.P.R. 795 (1992); *Rivera Maldonado v. E.L.A.*, 119 D.P.R. 74 (1987).

[4] En la referida decisión extendimos la protección contra el uso del mecanismo procesal de embargo a los sueldos devengados por los empleados de las corporaciones públicas al considerar que el uso del mencionado mecanismo tendría un efecto detrimental y nocivo para las corporaciones públicas y causaría una interferencia injustificada e indebida en la ejecución de las tareas de la agencia y un desvío impermisible de fondos públicos.

Conforme a su configuración funcional, a las corporaciones públicas se les define como "una institución que ofrece un servicio económico o social en nombre del gobierno, pero como una entidad jurídica independiente; conduce sus operaciones con gran autonomía, aun cuando es responsable ante el público, a través del gobierno y del parlamento, y sujet[a] a alguna directriz de parte del gobierno; equipada, por otro lado, con sus propios fondos independientes y separados, y con los atributos jurídicos y comerciales de una empresa comercial. Estos atributos colocarían a la corporación pública en algún lugar intermedio entre una autoridad pública pura y una compañía comercial de derecho privado". (Traducción nuestra.) W. Friedman, *The Public Corporation, A Comparative Symposium*, Canada, Carswell Co., 1954, pág. 541.

. . . . . . . .

Las corporaciones públicas reciben mediante su estatuto habilitador cierto grado de independencia económica en cuanto a su presupuesto operacional. Se persigue por ese medio que, aparte de las asignaciones presupuestarias que puedan recibir del Estado, éstas procuren en todo o en parte generar su propio capital, ya sea mediante la emisión de obligaciones, préstamos o por medio de los ingresos que reciban de los bienes y servicios que ofrezcan. Hay que aclarar, sin embargo, que esta autonomía financiera recibe mayor o menor fiscalización por parte del Estado, conforme el enfoque o política pública que a tales fines adopte el país bajo el cual opera la corporación pública.

En Puerto Rico, el control gubernamental sobre las corporaciones públicas se plasma mediante las propias leyes habilitadoras de la corporación pública de que se trate y leyes que directamente inciden sobre ésta.

. . . . . . .

El Estado escoge la figura de la corporación pública como herramienta para implantar una política pública en particular cuando determina que por ese medio es el que con más alta probabilidad de eficiencia puede llevar a cabo un programa o servicio. Cabe señalar que gran parte de éstos están clasificados como servicios esenciales. Quiere esto decir que aunque las corporaciones públicas se erigen sobre ciertas bases de autonomía operacional, no por ello dejan de estar investidas de un alto interés gubernamental en que su funcionamiento sea de la calidad y eficiencia más alta posible y, por ende, que su funcionamiento esté protegido de toda interferencia innecesaria. (Escolios omitidos.)

No toda agencia o instrumentalidad del Gobierno, naturalmente, es una corporación pública que funciona como

empresa o negocio privado. Para determinar qué constituye una "instrumentalidad del gobierno", que funciona como negocio privado, hemos enumerado jurisprudencialmente una serie de *factores* que, entre otros, deben ser examinados al hacer dicha determinación, *a saber*: si los empleados de la agencia concernida están cubiertos por la Ley de Personal del Estado Libre Asociado; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca han sido prestados por la empresa privada; si la empresa está capacitada para funcionar como empresa o negocio privado; si la agencia de hecho funciona como una empresa o negocio privado; el grado de autonomía fiscal de que disfrute la agencia; el grado de autonomía administrativa de que goce; si se cobra o no un precio o tarifas por el servicio rendido; si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o actividades que tengan por objeto un beneficio pecuniario. Véase *J.R.T. v. Junta de Retiro para Maestros*, 127 D.P.R. 621 (1990).

En adición, puede considerarse la estructura en sí de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su situación fiscal y sin empeñar el crédito del Estado Libre Asociado; la facultad de adquirir y administrar propiedades sin la intervención del Estado; la capacidad para concertar acuerdos o contratos, y la capacidad para aceptar donaciones. Véanse: *Pagán et al. v. E.L.A. et al.*, 131 D.P.R. 795 (1992); *J.R.T. v. Junta de Retiro para Maestros*, ante; *Morales González v. J.R.T.*, 121 D.P.R. 249 (1988); *A.A.A. v. Unión de Empleados A.A.A.*, 105 D.P.R. 437 (1976); *Canchani v. C.R.U.V.*, 105 D.P.R. 352 (1976).

Como norma general, y como consecuencia lógica de su personalidad jurídica distinta y separada del Estado, las

corporaciones públicas han sido dotadas de la facultad para demandar y ser demandadas, en asuntos relacionados a su función pública, sujeto a las limitaciones impuestas en su ley habilitadora. *Tal facultad las excluye, de ordinario, del ámbito de aplicación de la Ley Núm. 104*, ante, *sobre reclamaciones y demandas contra el Estado*. Por lo tanto, salvo disposición en contrario, *no existen límites a su responsabilidad económica relacionada con actuaciones torticeras de sus funcionarios, agentes o empleados en el desempeño de su cargo o empleo.*

Sabido es que las "entidades gubernamentales" están *exentas* de los procedimientos de embargo. Ello es así por razón de que, *como cuestión de política pública*, "las actividades gubernamentales no deben estar sujetas a las inconveniencias de estos procedimientos que interfieren con el descargo de funciones públicas en detrimento del bien común". *Stump Corp. v. Tribunal Superior*, 99 D.P.R. 179, 181 (1970).

Ello no obstante, en lo que respecta a las corporaciones públicas y conforme a las limitaciones existentes en sus respectivas leyes habilitadoras, éstas, por su naturaleza, pueden ser objeto de procedimientos de embargo respecto a sus fondos y propiedades, cuando la legislatura le ha otorgado suficientes poderes operacionales como para considerarlas tan sujetas a "procedimientos judiciales como en circunstancias análogas lo estaría cualquier empresa privada, siempre que tal procedimiento no interfiera con la ejecución de sus funciones ejecutivas". *Arraiza v. Reyes; León, Interventor*, 70 D.P.R. 614, 618 (1949).

## IV

En el caso particular de la A.A.A., ésta fue creada como una corporación pública e instrumentalidad gubernamental autónoma del Estado Libre Asociado de Puerto Rico, y el ejercicio de los poderes que le fueron concedidos por su

ley habilitadora se estima como una función gubernamental esencial. 22 L.P.R.A. sec. 142.

Según señalamos en *A.A.A. v. Unión de Empleados A.A.A.*, ante, págs. 456–457:

La Autoridad "es un cuerpo corporativo ... una corporación pública e instrumentalidad gubernamental autónoma del Estado Libre Asociado ...." 22 L.P.R.A. sec. 142. Posee *una estructura análoga a la de una corporación privada*, con su Junta de Gobierno y su personal ejecutivo responsable a la Junta. 22 L.P.R.A. sec. 143. Goza de sucesión perpetua. Puede demandar y ser demandada, aunque con ciertas restricciones, pero no tan amplias como las que protegen al Estado. Puede contratar libremente; adquirir y disponer de bienes raíces; "tener completo dominio de sus propiedades y actividades"; "tomar dinero a préstamo y emitir bonos de renta para cualesquiera de sus fines corporativos...." Los bonos y otra evidencia de deuda que emite la Autoridad no empeñan el crédito o el poder de imponer tributos del Estado Libre Asociado. 22 L.P.R.A. sec. 144. La Autoridad cobra por los servicios que rinde y, como se trata de bonos de renta, debe cobrar sustancialmente lo que éstos valen para permitir, como en el caso de un financiamiento privado análogo, la amortización adecuada de la deuda. 22 L.P.R.A. secs. 144(i) y 152. La Autoridad *puede incuestionablemente dedicarse a actividades que tengan por objeto "un beneficio pecuniario"*, dentro del significado de esta frase según nuestra decisión en *Junta Rel. Trabajo v. Junta del Muelle*, supra. *La Autoridad de Acueductos y Alcantarillados está indudablemente capacitada como una empresa o negocio privado y de hecho funciona como tal.* (Énfasis suplido.)

Es de notar que, entre las facultades y poderes que le fueron conferidas a la A.A.A., se encuentra la de tener sucesión perpetua como corporación y la de demandar y ser demandada como tal corporación. 22 L.P.R.A. secs. 144(a) y 144(c). Ello no obstante, la Legislatura limitó la responsabilidad de la referida corporación pública al disponer que la misma no podrá ser demandada por daños y perjuicios causados por la impureza, irregularidad o insuficiencia real o alegada del agua servida por ella. 22 L.P.R.A. 144(c).

En lo pertinente, resulta *procedente enfatizar* que en la ley habilitadora de la A.A.A. se dispuso que *no* se permitirá

la venta judicial de las *"propiedades"* de la misma. Íd. Este hecho, sin embargo, *no* significa que los *fondos* de la A.A.A., sean operacionales o no, también quedan exceptuados del procedimiento de embargo y de ejecución de sentencia. Así concluirlo significaría, a nuestra manera de ver las cosas, concederle, por fíat judicial, una inmunidad a la A.A.A. que el legislador definitivamente nunca ha contemplado.

*En conclusión*, la A.A.A. como corporación pública autónoma, cuya estructura corporativa le confiere los poderes y facultades necesarios para operar como una empresa o negocio privado, está sujeta, *como norma general*, a los procedimientos de embargo en ejecución de sentencia; ello, con las limitaciones antes señaladas dispuestas en su ley habilitadora. Como cuestión de hecho, así lo hemos resuelto. En *Arraiza v. Reyes; León, Interventor*, ante, pág. 618, en atención a los poderes y facultades concedidas a la A.A.A., señalamos que la legislatura claramente expresó su intención de que aquella "estuviera tan sujeta a procedimientos judiciales como en circunstancias análogas lo estaría cualquier empresa privada, siempre que no se interfiera con la ejecución de sus funciones ejecutivas".

## V

Somos del criterio que, *dados los hechos específicos y particulares del caso ante nuestra consideración*, resulta evidente que permitir el embargo de fondos de la A.A.A. en ejecución de una sentencia por una suma de dinero tan *extraordinariamente alta* precisamente tendrá el efecto de interferir "con la ejecución de sus funciones ejecutivas"; lo cual tendrá la consecuencia nefasta de afectar y perjudicar seriamente a toda la ciudadanía puertorriqueña.

Ahora bien, el hecho de que ello así sea en el presente caso, *no* debe servir de base para que el Tribunal, sin más, establezca una norma general, extremadamente amplia, la

cual implica que todo acreedor por sentencia de la A.A.A., no importa cuán pequeño sea su crédito judicial, tenga que esperar a que la A.A.A. incluya, "en el próximo presupuesto funcional", una partida para satisfacer dicho crédito judicial. Ello no sólo es innecesario sino que totalmente ilógico y absurdo. La A.A.A, no importa la crisis fiscal que hoy atraviesa, ciertamente puede deber pagar cantidades *no* sustanciales a sus acreedores por sentencia.

De manera, pues, que somos del criterio que resulta sumamente lógico y de sentido común que, en relación con esta clase de situaciones, se establezca por este Tribunal una norma a los efectos de que los tribunales de instancia, al enfrentarse a la solicitud de embargo en ejecución de sentencia, deberán resolver —*caso a caso*— si la referida solicitud interfiere, o no, de manera irrazonable con la ejecución de las funciones ejecutivas de la A.A.A.; dependiendo de cuál sea la determinación, naturalmente, se concederá o denegará la solicitud de embargo en ejecución de sentencia.(⁵) Dicha norma, *igualmente*, deberá ser aplicada en casos en que esté envuelta *cualquier otra* corporación pública similar a la A.A.A., cuya ley habilitadora así lo permita.

En resumen, y en atención a todo lo antes expuesto, somos del criterio que, en lugar de establecer la norma innecesariamente amplia que establece la mayoría en el día de hoy, resultaría más lógico y de sentido común que se adoptara como metodología adjudicativa, en casos de esta naturaleza y en relación con las corporaciones públicas existentes en nuestro País, el procedimiento de análisis "caso a caso", para lo cual se podría tomar en consideración factores tales como: la cuantía envuelta, la condición fiscal al momento del embargo solicitado de la corporación pública de que se trate, así como también las consecuencias

---

(⁵) Denegado el embargo en ejecución de sentencia, el foro de instancia deberá proceder a ordenarle a la A.A.A. que incluya dicha suma de dinero en el próximo presupuesto de la referida agencia.

extraordinarias que el embargo de los fondos pueda ocasionar y si el mismo interfiere irrazonablemente con la ejecución de las funciones ejecutivas de la corporación pública concernida.

Esta norma —distinta a la formulada hoy por el Tribunal— es una que establece un "balance de intereses" entre aquellos del ciudadano común y corriente que obtiene una sentencia contra la A.A.A. y los intereses de esta corporación pública y, naturalmente, los de la ciudadanía en general.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Hernández Denton.

A solicitud de Librotex, Inc. y la Librería y Editorial Lea, Inc. revisamos la resolución emitida por el ilustrado Tribunal Superior, que dejó sin efecto una orden de embargo de bienes contra la Autoridad de Acueductos y Alcantarillados (en adelante la Autoridad), por entender que el embargo en cuestión interfería con las funciones de dicha corporación pública.

Concurrimos con la opinión mayoritaria y la opinión concurrente del Juez Asociado Señor Rebollo López en cuanto determinan que la Autoridad está sujeta a los procedimientos judiciales de embargo y siempre que esto no interfiera con la ejecución de sus funciones. Sin embargo, por entender que ante el foro de instancia no se presentó evidencia específica a los efectos de que el embargo solicitado, o parte de él, interferiría con las funciones ejecutivas de la Autoridad y que el caso se debiera devolver al tribunal a quo para que reciba y dirima la prueba que se requiere para hacer esta determinación, disentimos.

# I

La Regla 56.1 de Procedimiento Civil dispone que "en todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia". 32 L.P.R.A. Ap. III. Como una de dichas medidas provisionales, esta regla permite que se decrete el embargo de bienes y el embargo de fondos en posesión de un tercero. Éste se podrá otorgar sin la prestación de fianza cuando "se gestionare el remedio después de la sentencia". Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

La cuantía de dicho embargo deberá estar limitada a la cuantía reclamada en la demanda o a la cuantía dictada mediante sentencia. Es decir, se permite tan sólo el embargo de aquellos bienes del deudor que sean suficientes para responder por el monto total de la sentencia o por el monto total reclamado. *Carlo v. Corte*, 58 D.P.R. 889, 894–895 (1941).

Sin embargo, cuando se trate de un corporación pública, hemos determinado que los tribunales de instancia están limitados, al otorgar un embargo, por el efecto negativo que pudiese tener el embargo solicitado sobre la capacidad de la corporación pública de llevar a cabo sus funciones ejecutivas. A esos efectos, en *Arraiza v. Reyes; León, Interventor*, 70 D.P.R. 614, 618 (1949), determinamos específicamente que la Autoridad está "tan sujeta a procedimientos judiciales como en circunstancias análogas lo estaría cualquier empresa privada, siempre que no se interfiera con la ejecución de sus funciones ejecutivas". Esta norma aplica a todas las corporaciones públicas en nuestra jurisdicción y debe aplicarse tomando en cuenta las limitaciones que pueda imponer el estatuto habilitador de la corporación pública pertinente. Véase, por ejemplo, 22 L.P.R.A. sec. 144(c), la cual dispone que no se podrá demandar a la

Autoridad por los daños causados por irregularidades en el agua que sirve.

La norma antes enunciada se justifica por la naturaleza de las corporaciones públicas y de los servicios que éstas ofrecen a la ciudadanía. A pesar de que éstas no son entidades gubernamentales exentas de los procedimientos de embargo —*Stump Corp. v. Tribunal Superior*, 99 D.P.R. 179 (1970)— las corporaciones públicas responden a propósitos de utilidad pública y los fondos con los cuales operan son fondos públicos. *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478 (1990). En consecuencia, un embargo decretado contra estas corporaciones no debe intervenir con el descargo de sus funciones, en detrimento del bienestar de toda la ciudadanía.

A la luz de dicha doctrina, una vez trabado el embargo por el acreedor, le corresponde demostrar a la corporación pública, por preponderancia de la prueba, que de permitirse la ejecución del embargo solicitado se interferiría con su capacidad para llevar a cabo sus funciones ejecutivas.

La función del Tribunal Superior —en esta controversia tan compleja— es determinar cuál es la cuantía máxima por la cual se puede permitir el embargo, sin que éste sea detrimental a la capacidad de dicha instrumentalidad de cumplir con sus funciones ejecutivas.

## II

Al aplicar las normas anteriores al caso ante nos, entendemos que la Autoridad no presentó evidencia ante el Tribunal Superior que demuestre que, si se otorga el embargo concedido, éste interferiría con la capacidad de la Autoridad para llevar a cabo sus funciones ejecutivas. Lo único que surge del expediente es simplemente una serie de alegaciones de la Autoridad con respecto a que, de otorgarse el embargo solicitado, no podría pagar su nómina ni cumplir compromisos previos con sus bonistas. Además, para sus-

tentar su alegación, la Autoridad descansó en la Orden Ejecutiva del Gobernador Pedro Rosselló de 13 de septiembre de 1993, en la cual declara un estado de emergencia en la Autoridad y ordena a su director a llevar a cabo las gestiones necesarias para finalizar éste.

Contrario a lo expresado en la opinión mayoritaria, este dato no nos parece evidente. Tampoco nos parece prueba suficiente a esos efectos el hecho de que el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Pedro Rosselló, declarara mediante Orden Ejecutiva un estado de emergencia en la Autoridad. El hecho de que una entidad se encuentre en medio de una crisis económica no necesariamente quiere decir que el desembolso de una cantidad específica de dinero le impida cumplir con sus funciones ejecutivas. Dicha determinación depende de los bienes que han de ser embargados, de la utilización que la corporación pública esté brindando o piense brindar a éstos y de la cuantía del embargo solicitado.

La doctrina aplicable a estos casos permite a los tribunales de instancia determinar, luego de que se le presente prueba al respecto, si el embargo solicitado interferiría con la capacidad de la corporación pública para llevar a cabo sus funciones ejecutivas. Más aún, dicho foro tiene discreción para decretar el embargo por una suma inferior a la solicitada, si es que dicho embargo por la cuantía total solicitada interfiere con las funciones ejecutivas de dicha entidad, y para disponer cualquier otra providencia que en equidad permita al acreedor asegurar el restante de la cuantía reclamada o hacer efectivo el restante de su sentencia.

Sin el beneficio de la presentación de evidencia con respecto a la interferencia del embargo con las funciones ejecutivas de la Autoridad, no podemos coincidir con las opiniones emitidas en este caso, en cuanto intentan salvaguardar los derechos de Librotex, Inc., al obligar a los directores de la Autoridad a incluir una partida en el

próximo presupuesto anual de dicha entidad para satisfacer la totalidad de la sentencia dictada en este caso.

El efecto de tal curso decisorio es que Librotex, Inc. tendrá que esperar hasta que se determine el próximo presupuesto de la Autoridad para lograr que se haga efectiva su sentencia. No sólo eso sino que, además, la Autoridad estará obligada a pagar cerca de ciento sesenta mil dólares ($160,000) adicionales por concepto de intereses legales, en detrimento de la crítica situación económica de dicha entidad.

Entendemos que es importante que se devuelva el caso al ilustrado Tribunal Superior para que, con el beneficio de las normas que hoy hemos adoptado, tenga la oportunidad de recibir la prueba correspondiente y determinar si la Autoridad está en posición de satisfacer parte de la sentencia, sin que ello perjudique su capacidad para realizar sus funciones ejecutivas o si, por el contrario, realmente cualquier desembolso interferiría con dicha funciones.

Por los fundamentos expuestos, revocaría la resolución del Tribunal Superior que dejó sin efecto la orden de embargo emitida en contra de la Autoridad y devolvería el caso para que dicho foro celebre una vista evidenciaria para determinar si en realidad el embargo solicitado o parte de éste interferiría con la capacidad de la Autoridad de realizar sus funciones ejecutivas.