*In re* SOLICITUD DEL PERIÓDICO EL VOCERO: EXAMEN INFORME DIVULGACIÓN FINANCIERA DEL JUEZ CAMPOAMOR REDÍN.

*Número:* MC-92-24        *Resuelto:* 6 de noviembre de 1992

## RESOLUCIÓN

Atendida la solicitud del periódico *El Vocero de Puerto Rico* respecto a los Informes de Divulgación Financiera del Hon. Juez Superior Fernando Campoamor Redín para los años 1990 y 1991, la comparecencia del referido magistrado en oposición a dicha solicitud y, sobre todo, las disposiciones de la Regla 9 del Reglamento aplicable al Canon X de los Cánones de Ética Judicial sobre los Informes de Divulgación de Actividades Extrajudiciales y Financieras de los Jueces, adoptado por este Tribunal con fecha de 23 de diciembre de 1986, se requiere del peticionario *El Vocero de Puerto Rico* que exponga, en forma más definida, el interés legítimo y la necesidad que tiene de la información contenida en dichos informes financieros para someter datos adicionales que revelen la posible violación al citado Canon X del Código de Ética Profesional, o de ley, u otros extremos.

Lo acordó el Tribunal y certifica el señor Secretario

General. El Juez Asociado Señor Negrón García emitió voto disidente.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Voto disidente del Juez Asociado Señor Negrón García.

## I

La negativa de la mayoría del Tribunal a darle *acceso inmediato* al periódico *El Vocero de Puerto Rico* de los Informes financieros sometidos por el Juez Superior, Hon. Fernando Campoamor Redín para los años 1990 y 1991, sienta un dañino y peligroso precedente que sitúa a los jueces en una posición de *privilegio irritante*. Teje a la vez, un manto de secretividad que obstaculiza irrazonablemente que afloren y se conozcan las virtudes éticas de todos los miembros de la judicatura puertorriqueña. Lo oculto genera suspicacia, promueve malos entendidos y frustra las expectativas ciudadanas.

## II

De su faz, la petición de *El Vocero de Puerto Rico* cumple satisfactoriamente con la Regla 9 del reglamento aplicable al Canon X del Código de Ética Judicial sobre Informes de Divulgación de Actividades Extrajudiciales y Financieras de los Jueces.

En *primer* lugar, se trata de un periódico que constitucionalmente tiene "un interés legítimo", atado inexorablemente a la *legitimación activa* que posee fundada en su razón de ser y función.([1]) Negársela, es negar su propia

---

([1]) Aparte de que esa condición por sí sola acredita un "interés legítimo", cabe cuestionarse la validez de ese requisito bajo el actual ordenamiento constitucional

existencia. "En la esfera política, los medios informativos han sido llamados con propiedad 'la cuarta rama del gobierno', nombre que describe la función del periodismo como guardián fiel y motivador de las otras tres ramas. El medio tiene poder e influencia en las esferas sociales, políticas y económicas de la sociedad." L. Brown, *Responsabilidad Social de la Prensa*, México, Eds. Asociados, 1977, pág. 9. Aun con todas las imperfecciones de esos medios de comunicación, en una democracia, la publicidad tiende a garantizar posteriormente un control constructivo sobre la obra gubernamental, incluso la administración de justicia; sobre todo, fomenta su credibilidad. *Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982). La característica medular del periodismo moderno es su dinamismo: noticia del momento, actualizada y procesada instantáneamente por medio de la televisión, la radio y, en cierta medida, la prensa diaria escrita. *El Vocero de P.R. v. E.L.A.*, 131 D.P.R. 356 (1992), opinión disidente.

En segundo lugar, ¿qué "más exposición definida" o especificación puede exigírsele a *El Vocero de Puerto Rico?* Nos parece que la resolución presupone un conocimiento cabal previo de la información que precisamente se interesa examinar. Ello conlleva el absurdo de hacer innecesario el examen del informe financiero.

*Finalmente*, es evidente que la mayoría del Tribunal hoy debilita la labor de fiscalización genuina de la prensa sobre los miembros de la judicatura y demás funcionarios claves de la Rama Judicial. Jamás esa fue la intención al aprobar el Reglamento. Después de este enfoque, ¿con qué fuerza moral podemos evaluar reclamos análogos contra los miembros de la Rama Ejecutiva y Legislativa? La Constitución ni las leyes nos autorizan a ser arbitrarios. "[L]a justicia ... no reconoce castas ni jerarquías ...." *Moreno v. Gore, Gobernador*, 46 D.P.R. 408, 417 (1934).

---

vigente. Dejamos para mejor ocasión pronunciarnos sobre este extremo.