EL VOCERO DE PUERTO RICO, demandante y peticionario, *v.* ILEANA M. COLÓN CARLO, en su capacidad de CONTRALOR DE PUERTO RICO, demandada y recurrida.

*Número:* MD-96-6          *Resuelto:* 30 de septiembre de 1996

*Juan R. Marchand Quintero, José E. Colón Rodríguez,* y *Francisco Ortiz Santini,* de *Rivera Cestero & Marchand Quintero,* abogados del peticionario; *José Hamid Rivera,* abogado de la recurrida.

Sala Especial de Verano integrada por el Juez Presidente

Señor Andréu García, y los Jueces Asociados Señor Negrón García, Señor Hernández Denton y Señor Corrada Del Río.

## RESOLUCIÓN

Examinados la Petición de *Mandamus* y sus anejos presentados por la parte peticionaria, así como la Moción de Desestimación presentada por la parte recurrida en el caso de epígrafe, *se deniega el "mandamus" solicitado.*

La parte demandante carece de legitimación activa para instar la causa de acción de *mandamus* en este caso. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *Hernández Torres v. Hernández Colón et al.*, 131 D.P.R. 593 (1992); *Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); *Fund. Arqueológica v. Depto. de la Vivienda*, 109 D.P.R. 387 (1980). Su derecho de acceso a la información no le confiere el derecho de obligar a la parte demandada a producir información que no existe a la luz de la auditoría limitada realizada por la parte demandada. Por otra parte, en el Informe de Auditoría DA-96-40 objeto de este recurso[1] la parte demandada hace constar que "[d]eterminamos emitir varios informes de esta auditoría [y que e]ste primer informe contiene el resultado de la auditoría realizada con los gastos de viajes al exterior del Lic. Rafael Hernández Colón, ex Gobernador de Puerto Rico". Anejo 2, pág. 1.

Además, la Resolución Concurrente del Senado Núm. 51 de 19 de enero de 1995[2] le requirió a la parte demandada "un informe especial, con carácter de urgencia, sobre los viajes oficiales del Hon. Rafael Hernández Colón durante

---

[1] Véase Anejo 2 de la Petición de *Mandamus*.

[2] Véase Anejo 1 de la Petición de *Mandamus*.

su último cuatrienio en la gobernación de Puerto Rico (1989–1992) a propósito de constatar la legalidad y razonabilidad de los mismos a la luz de lo que pautan la Ley de Contabilidad del Gobierno y las demás disposiciones constitucionales, legales y reglamentarias aplicables". No surge de dicha resolución concurrente que se le impusiera a la parte demandada el claro deber ministerial de auditar todos y cada uno de los gastos de viaje del ex Gobernador para cada uno de dichos años.

No se justifica, además, el ejercicio de nuestra jurisdicción original en el presente recurso de *mandamus*, por no cumplirse el requisito de que "el problema planteado requiere una resolución pronta y definitiva". *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264, 275 (1960). El ex Gobernador Rafael Hernández Colón no es candidato a un puesto electivo en las elecciones generales de 5 de noviembre de 1996, de lo cual tomamos conocimiento judicial. La discusión pública de este tema no está, por consiguiente, limitado a un ámbito electoral inmediato ni su resolución requiere una atención urgente especial.

Lo acordó el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Negrón García emitió una opinión disidente y concurrente.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión disidente y concurrente del Juez Asociado Señor Negrón García.

Al igual que con las opiniones judiciales, siempre hay espacio para discrepar, e incluso criticar, las conclusiones —rigurosidad o indulgencia— de los Informes de la Contralor. Ello no es suficiente para justificar un *mandamus*.

# I

*El Vocero de Puerto Rico* invoca nuestra jurisdicción original de primera instancia y nos solicita su expedición contra la Contralor de Puerto Rico, Lcda. Ileana Colón Carlo. En síntesis, alega que dicha funcionaria no cumplió con el deber ministerial impuesto por la Resolución Concurrente del Senado Núm. 51 de 19 de enero de 1995 que le encomendó —a la luz de la Ley de Contabilidad del Gobierno de Puerto Rico— investigar la legalidad y razonabilidad de los gastos de viaje en que incurrió el ex Gobernador, Lcdo. Rafael Hernández Colón, durante el período comprendido entre el 1989 al 1992, ambos inclusive. Aduce que el Informe realmente sólo auditó los viajes de 1992 y que la Contralor no formuló recomendaciones en cuanto a referir a los organismos pertinentes las violaciones detectadas.

Específicamente configura así su pretendida causa de acción: "La Contralora está sujeta al deber ministerial de cumplir a cabalidad con la citada Resolución Concurrente Núm. 51. No puede cuestionarse que el asunto aquí planteado posee un enorme 'impacto al interés público', factor clave reconocido por esta Curia en el engranaje del auto de *mandamus*. *El peticionario, en el ejercicio de su derecho constitucional a la libertad de prensa y expresión, y en el descargo de su obligación de mantener a la ciudadanía informada de asuntos oficiales de Gobierno, tiene derecho de acceso a aquella información que estaría disponible para inspección pública de haber cumplido la Contralora con la labor que le fuera encomendada."* (Énfasis suplido y en el original.) Petición de auto de *mandamus*, pág. 6.

Por su parte, la demandada, licenciada Colón Carlo, se ha sometido a nuestra jurisdicción y nos pide la desestimación sumaria de la petición, con imposición de costas de honorarios por ser, a su juicio, frívola. Sostiene que *El Vocero de Puerto Rico* carece de legitimación activa para demandarla. Vehementemente argumenta como corolario a

la independencia de criterio que le concede la Constitución, *primero*, que ninguna Rama de Gobierno —Ejecutiva, Legislativa o Judicial— puede ordenarle realizar una auditoría que no especifique el período que ha de investigar y la fecha para rendir un informe al efecto y, *segundo*, que su obligación ante una solicitud de la Legislatura o del Gobernador, se limita a rendir el informe especial cuando lo estime adecuado y prudente, según su itinerario de trabajo y mejor utilización de sus recursos.

## II

En lo que respecta a la prensa, recientemente, en *Coss y U.P.R. v. C.E.E.*, 137 D.P.R. 877, 883–884 (1995), reafirmamos la doctrina de que "los dueños y editores de un periódico tienen un interés especial que los legitima para representarlo en los tribunales e invocar derechos a su favor. *Prensa Insular de P.R. v. Cordero, Auditor*, 67 D.P.R. 89, 102–103 (1947)". ¿Cómo puede entonces la mayoría del Tribunal negar la legitimación activa (*standing*) *de "El Vocero de Puerto Rico" a través de su Presidente*, señor Gaspar Roca, en virtud del "interés especial" que ostenta como dueño y editor de un periódico? *Posee esa cualidad por su razón de ser; negársela, es negar su existencia como prensa.*

"En la esfera política, los medios informativos han sido llamados con propiedad 'la cuarta rama del gobierno', nombre que describe la función del periodismo como guardián fiel y motivador de las otras tres ramas. El medio tiene poder e influencia en las esferas sociales, políticas y económicas de la sociedad." L. Brown, *Responsabilidad Social de la Prensa*, México, Eds. Asociados, 1977, pág. 9. Aun con todas las imperfecciones de esos medios de comunicación, en una democracia, la publicidad tiende a garantizar posteriormente un control constructivo sobre la obra gubernamental, incluso la administración de justicia; sobre todo, fomenta su credibilidad. *Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982). La característica medular del periodismo moderno es su dinamismo: noticia del momento, actualizada y procesada instantáneamente por medio de la televisión, la radio y, en cierta medida, la prensa diaria escrita. *El*

*Vocero de P.R. v. E.L.A.*, 131 D.P.R. 356 (1992), opinión disidente. *Sol. Examen Int. Div. Fin. J. Campoamor*, 131 D.P.R. 1002, 1004 (1992), voto disidente.

Sobre este aspecto *disentimos* del dictamen mayoritario que rehúsa reconocerle a *El Vocero de Puerto Rico* legitimación activa.

### III

Así aclarado, es menester recordar que es cuestión de interés público "que las leyes se pongan en ejecución ... y [que] el *mandamus* tiene por objeto conseguir la ejecución de un deber público ...". *Asociación de Maestros v. Pérez, Gobernador Int.*, 67 D.P.R. 848, 851 (1947).

Examinemos, pues, la procedencia del *mandamus* a la luz de las prerrogativas y los deberes de la Contralor. Recientemente, en *RDT Const. Corp. v. Contralor I*, 141 D.P.R. 424, 450-452 (1996),[1] expusimos *in extenso* cómo

En nuestro panorama jurídico, las facultades investigativas y la posición de la Contralor de Puerto Rico, de *génesis constitucional, son únicas*. Se creó para fiscalizar las cuentas, los ingresos y los desembolsos gubernamentales (*post audit*) y determinar si fueron hechos conforme a la ley. Diario de Sesiones, *supra*, págs. 920–927, 963–965, 1763, 1968–1973, 2577 y 2587–2588. Como tal, es una figura sui géneris.

La Sec. 22 del Art. III de la Constitución, *supra*, ed. 1982, pág. 347, en lo pertinente, dispone:

"... El Contralor fiscalizará todos los ingresos, cuentas y desembolsos del Estado, de sus agencias e instrumentalidades y de los municipios, para determinar si se han hecho de acuerdo con la ley. *Rendirá informes anuales y todos aquellos informes especiales que le sean requeridos por la Asamblea Legislativa o el Gobernador.*"

Ella vela por el fiel cumplimiento de la política pública encarnada en la Ley de Contabilidad del Gobierno de Puerto Rico, Ley Núm. 230 de 23 de julio de 1974 (3 L.P.R.A. secs. 283–283p)

---

[1] Pendiente de una moción de reconsideración interpuesta por la Contralor Lcda. Ileana Colón Carlo. Los pasajes aquí reproducidos corresponden a *nuestra* opinión concurrente, cuyo contenido en nada queda afectado por ese trámite.

y otros estatutos que, en síntesis, exigen que los gastos y fondos públicos sean legítimos y legales y promuevan la máxima economía y óptima utilización de los recursos públicos y que los gastos del Gobierno se hagan dentro de un marco de *utilidad, necesidad y austeridad.*

No se debate que la Oficina de la Contralor es parte del Poder Legislativo. Diario de Sesiones, *supra*, págs. 920 y 925; *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993); *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478 (1990); *E.L.A. v. Asoc. Empleados Obras Púb. Mun.*, 126 D.P.R. 320 (1990); *In re Ríos*, 112 D.P.R. 353 (1982). Como brazo auxiliar de la Asamblea Legislativa, fue dotado de iguales poderes investigativos por la propia Constitución. (Escolio omitido, énfasis en el original suprimido y énfasis suplido.)

Y más adelante, luego de destacar sus facultades constitucionales investigativas, allí enfatizamos que "[n]o son pocas las ocasiones en que sus informes generan tensiones y críticas de los funcionarios [concernidos]". *RDT Const. Corp. v. Contralor I*, supra, pág. 455 esc. 11. En el fondo, esa es la situación ante nos, pero desde la perspectiva del peticionario *El Vocero de Puerto Rico*. En pocas palabras, dicho rotativo no está satisfecho con el primer Informe. Esa insatisfacción no es reivindicable mediante *mandamus*. Elaboremos.

## IV

*Primero*, se trata de un *Informe especial inicial* que audita los gastos de viajes del anterior gobernador, licenciado Hernández Colón según el mandato *legítimo* de la Asamblea Legislativa al amparo del Art. 3, Sec. 22 de nuestra Constitución, L.P.R.A., Tomo 1, *que la Contralor viene obligada a acatar.* En el descargo de esa encomienda, *discrecionalmente* determinó "emitir *varios* informes de esta auditoría". (Énfasis suplido.) Anejo 2, pág. 1. Es de suponer que, oportunamente, rendirá otros informes. En este sentido, la queja de *El Vocero de Puerto Rico* —de que no recomendó que las violaciones de ley descubiertas fueran referidas a los organismos pertinentes— es *prematura* en

esta etapa. *Segundo*, la Contralor no ha privado a *El Vocero de Puerto Rico* de su derecho al acceso a documentos públicos. Sucede que el Informe, con carácter de *hallazgo principal*,(²) expone las irregularidades a la Ley de Contabilidad del Gobierno de Puerto Rico y a los reglamentos en que se incurrió con los viajes del ex Gobernador licenciado Hernández Colón durante los años 1990–1992. Citamos:

1–a. Contrario a la reglamentación, para los 13 viajes fuera de Puerto Rico realizados por el Gobernador durante el 1992 a un costo de $276,258 *no se estableció el propósito del viaje en la petición de fondos al Departamento de Hacienda para realizar éstos.* Dicha *información tampoco se indicó* en las liquidaciones correspondientes de los fondos anticipados.

Por otro lado, la División de Oficiales Pagadores Especiales del Negociado de Intervenciones del Departamento de Hacienda no requirió que se cumpliera con dicho requisito. Además, en la Oficina del Gobernador, ni en dicho Departamento se *encontró evidencia relacionada* con los propósitos de los viajes.

En entrevista con el Gobernador, el 19 de diciembre de 1995, éste nos informó el propósito de cada uno de los 13 viajes.

b. En la División de Finanzas de la Oficina del Gobernador *no se mantenía información* sobre el total de gastos incurridos por el Gobernador en cada uno de los 13 viajes mencionados. Nuestros auditores tuvieron que recurrir a fuentes alternas para hacer las determinaciones al respecto.

c. El entonces Gobernador ni la Pagadora Especial de Viaje sometieron *las facturas originales, recibos y pasajes cancelados por $117,921 (43 por ciento)* de los gastos incurridos durante el 1992 a la División de Finanzas y Presupuesto de la Oficina del Gobernador y al Departamento de Hacienda. *Dicho Departamento tampoco los requirió.* De dicho importe, $111,712 correspondían a desembolsos con cargo a las tarjetas de crédito asignadas al Gobernador.

La Oficina del Gobernador y dicho Departamento aceptaron como justificantes de los pagos los estados de cuenta que suministraron las empresas que expidieron las tarjetas de crédito.

*La falta de información y de documentos relacionados con los viajes mencionados dificulta verificar la corrección de los des-*

---

(²) Esta clasificación puede consistir en "irregularidades y errores graves o materiales determinados con motivo de las siguientes situaciones, entre otras: falsas representaciones, malversación de activos, aplicación incorrecta de principios de contabilidad y de disposiciones legales relevantes, fallas matemáticas, o por hechos mal interpretados". (Énfasis suprimido.) Anejo 2, pág. 3.

*embolsos efectuados.* (Énfasis en el original suprimido y énfasis suplido.) Anejo 2, págs. 2–3.

Ciertamente, la inexistencia o indisponibilidad de esos documentos ha privado a *El Vocero de. Puerto Rico* de poder examinarlos e informar a sus lectores. Sin embargo, el incumplimiento de los deberes ministeriales impuestos por la Ley de Contabilidad del Gobierno de Puerto Rico y los reglamentos, *no es imputable ni recae sobre la Contralor.*

La omisión del entonces Primer Ejecutivo, licenciado Hernández Colón, y su Oficina en su obligación de someter "las facturas originales, recibos y pasajes cancelados por $117.921" (Anejo 2, pág. 3) —constitutivo de unas irregularidades a la Ley de Contabilidad del Gobierno de Puerto Rico y los reglamentos— fue el factor directo que dificultó a la Contralor "verificar la corrección de los desembolsos". Íd.

No procede el *mandamus.*